Anna JEFFRIES, Appellant,

v.

PAT A. MADISON, INC. and Denis Papasan, Appellees.

No. 11–07–00185–CV.

Court of Appeals of Texas, Eastland.

Oct. 9, 2008.

Steve Hershberger, Midland, for appellant.

John H. Dies, Rick Lee Oldenettel, Sean Michael Reagan, Oldenettel & Dies, Houston, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Anna Jeffries filed suit against Pat A. Madison, Inc.; Denis Papasan; Allied National, Inc.; and Guarantee Trust Life Insurance Company alleging several causes of action arising out of the denial of insurance coverage for a surgical procedure.[1] Madison and Papasan filed a traditional motion for summary judgment. The trial court granted the motion and entered a take-nothing judgment in their favor. Jeffries argues on appeal that this was error because a fact question exists on her negligent misrepresentation claim. We affirm.

### I. Background Facts

Jeffries purchased three consecutive short-term medical group insurance policies from Allied and Guarantee Trust through Papasan and Madison. Each policy provided coverage for six months. During the second policy's period of coverage (July 23, 2004–January 23, 2005), Jeffries was diagnosed with a thyroid condition that required surgery. On December 15, 2004, she met with Papasan and discussed the possibility of changing coverage to a new carrier. Jeffries alleged that Papasan told her not to change carriers because the new carrier would consider her thyroid a preexisting condition and that, when she asked about Allied, he responded that it "wouldn't be very nice of them but that [she] would have to pay an additional $1,000 deductible if [she had] the surgery after January 23, 2005." Jeffries purchased a third Allied policy. It covered the period January 23, 2005, through July 23, 2005. Jeffries's surgery was performed on February 24, 2005, and cost approximately $25,000. Allied denied coverage, contending that the surgery was for a preexisting condition.

### II. Issues on Appeal

Jeffries asserted several causes of action in her original petition, but her brief is limited to her negligent misrepresentation claim. Accordingly, the only issue before this court is whether Madison and Papasan were entitled to summary judgment on that claim.

### III. Analysis

#### A. Standard of Review.

When, as here, a party files a traditional motion for summary judgement, the standard of review is well settled. Questions of law are reviewed de novo. St. Paul Ins. Co. v. Tex. Dep't of Transp., 999 S.W.2d 881, 884 (Tex.App.–Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex.2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex.1985).

#### B. Negligent Misrepresentation.

---

1. We note that Jeffries filed a motion to dismiss her appeal as to Allied National and Guarantee Trust. On September 18, 2008, this court granted the motion. Accordingly, we do not address the summary judgment that was entered in favor of Allied and Guarantee.

■ The elements of a negligent misrepresentation claim are:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

(2) the defendant supplies false information for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991).

■ Negligent misrepresentation claims frequently arise when the parties have a relationship, but a plaintiff need not prove privity of contract. *See Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 234 (Tex.App.–Dallas 1985, writ ref'd n.r.e.). The duty to avoid making a negligent misrepresentation is separate from any other duty that may exist between the parties and can arise even if the parties' relationship would otherwise preclude a duty. *See, e.g., McCamish, Martin, Brown & Loeffler v. F. E. Appling Interests,* 991 S.W.2d 787, 795 (Tex.1999) (privity or an attorney-client relationship is not required to bring a negligent misrepresentation claim against an attorney).

### C. The Summary Judgment Evidence.

Madison and Papasan contend that they were entitled to summary judgment because Papasan made no misrepresentation or, alternatively, because Jeffries was charged with knowledge that the third policy would not cover her surgery. Jeffries executed an application on December 15, 2004. For reasons unexplained by the record, a second application was executed on January 17, 2005. The two applications are identical. They are labeled, "Temporary Health Insurance Application"; they provide that the policy is not a continuation of any prior temporary health insurance plan and that the plan will not pay any benefits for preexisting conditions as described in the plan brochure. The brochure included the following provision:

The Horizon's Temporary Health Plan is a TEMPORARY plan. It is not renewable and not meant to provide long periods of coverage. However, coverage may be rewritten for new and separate coverage periods as long as you meet the eligibility criteria described above and on the application. There is NO CONTINUOUS COVERAGE if the plan is rewritten. This means that a new application must be submitted, a new effective date is given, a new preexisting condition period begins and a new deductible and out-of-pocket expense must be met. Any condition which may have occurred under prior coverage will be treated as a preexisting condition under the rewritten coverage.

Finally, the plan itself specifically excluded coverage for preexisting conditions.

Jeffries filed a response to the motion for summary judgment. Her response included her affidavit in which she stated:

I first met with Denis Papas[a]n in December 2003 to purchase health insurance. He recommended Allied Insurance. He told me Allied was the insurance that he carried and suggested I buy it also.

I met with him again on December 15, 2004 and told him that I had been diagnosed with a thyroid condition and possibly switching to Blue Cross/Blue Shield because Allied's premiums kept going up. He told me to continue my insurance with Allied because Blue Cross/Blue Shield would treat my thyroid as a preexisting condition. When I asked

him "What about Allied?" he told me that "wouldn't be very nice of them" but that I "would have to pay an additional $1,000 deductible if I have the surgery after January 23, 2005." Denis led me to believe that Allied would cover me for the operation except for the $1,000 deductible. Based on this statement I waited until after January 23, 2005 to have the operation.

Jeffries subsequently filed a supplemental response and an additional affidavit. In this affidavit, she stated that, during the December 15 meeting, Papasan told her it would be best to stay with Allied because Blue Cross/Blue Shield would consider her thyroid a preexisting condition; that, when she gave him her January premium payment, he told her that there would be no lapse in coverage; and that she trusted him and would have never purchased "temporary" insurance.

*D. Analysis.*

■ Jeffries argues that Papasan supplied her with false information by leading her to believe that Allied would cover her operation if she purchased the third policy. Specifically, she refers us to Papasan's statement that it "wouldn't be very nice of them" when they were discussing the preexisting condition exclusion and to his statement that, if her surgery took place after January 23, she would have to pay an additional $1,000 deductible. Madison and Papasan contend that saying something "wouldn't be very nice of them" is not a positive assertion of fact and, thus, is not actionable. We agree if this is considered on its own. However, Papasan's statement must be considered in context. Jeffries also testified that Papasan told her she would have to pay an additional $1,000 deductible if her surgery was after January 23. One does not pay a deductible for an excluded claim. If we consider this testimony in the light most favorable to

Jeffries, it is evidence that Papasan represented to Jeffries that she would have coverage for her thyroid surgery under the third policy.

The next question is whether Jeffries was entitled to rely upon this statement in the face of written documentation clearly excluding coverage. In *Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex.App.–Houston [14th Dist.] 1989, no writ), the court held that a misrepresentation claim cannot stand when the party asserting the claim is legally charged with knowledge of the true facts. In *Pankow v. Colonial Life Ins. Co. of Tex.*, 932 S.W.2d 271, 277 (Tex.App.–Amarillo 1996, writ denied), the court held that an insured is charged with knowledge of the provisions of his policy. *See also E.R. Dupuis Concrete Co. v. Penn Mutual Life Ins. Co.*, 137 S.W.3d 311, 321–22 (Tex.App.–Beaumont 2004, no pet.) (claimant could not complain about the failure to disclose information about an insurance policy that was available by reading the policy).

Jeffries was charged with notice of the policy provisions. The same holds true for the terms of the policy application and the plan brochure. Each of these documents clearly and unambiguously described the policy as temporary coverage, and each disclaimed any coverage for preexisting conditions. Because Jeffries knew of her thyroid condition by December 15, she was charged as a matter of law with knowledge that the third policy would not cover the thyroid surgery. The trial court correctly granted the motion for summary judgment, and Jeffries's issue is overruled.

### III. *Holding*

The judgment of the trial court is affirmed.