# NO. 12-07-00477-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FRANK KEATHLEY AND MELISSA KEATHLEY, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #3* |
| *CORBITT BAKER, CARROLL BOBO D/B/A UNITED COUNTRY BOBO REALTY, AND MOLLY BOBO D/B/A UNITED COUNTRY BOBO REALTY, APPELLEES* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Frank Keathley and Melissa Keathley appeal the trial court's summary judgments in favor of Corbitt Baker, Carroll Bobo d/b/a United Country Bobo Realty, and Molly Bobo d/b/a United Country Bobo Realty. The Keathleys raise three issues on appeal. We affirm in part, and reverse and remand in part.

### BACKGROUND

On October 16, 2003, Ruth Baker entered into a residential real estate listing agreement with the Bobos to sell her house located in Tyler, Smith County, Texas. At some point, the Keathleys, who were attempting to relocate to East Texas, became interested in purchasing Ruth's house. However, Ruth died on January 16, 2004. On February 20, 2004, Ruth's son, Corbitt Baker, agreed to sell Ruth's house to the Keathleys and entered into a residential real estate contract (the "contract") with them. According to Frank Keathley, Corbitt and the Bobos informed him that

Corbitt had inherited Ruth's house. Frank Keathley, a licensed real estate agent, represented himself and his wife in the transaction. The closing date specified in the contract was June 1, 2004. Later, the Bobos and Corbitt entered into an amended listing agreement for Ruth's house.

Pursuant to its terms, the contract was submitted to a title company for closing. The title policy commitment dated February 10, 2004 revealed that title to Ruth's house was held by The Bobby H. Baker and Ruth E. Baker Revocable Living Trust. The title commitment also revealed that Corbitt's father, Bobby H. Baker, and Ruth had divorced and that Bobby had conveyed his interest in the house to Ruth. According to Corbitt, however, the trust was never amended or revoked. The title company informed Corbitt that the company could not issue a title policy on the house unless Corbitt's father and his brother signed the deed conveying the house to the Keathleys. Corbitt's father and brother refused to do so despite Corbitt's attempts to negotiate with them. Eventually, Corbitt filed a declaratory judgment action to establish his title to the property. On September 16, 2005, Corbitt obtained a judgment establishing that he had clear title to Ruth's house.

Although the Keathleys were aware that the trust held title to Ruth's house, they were not informed that Corbitt was having problems obtaining clear title. According to Frank Keathley, Carroll Bobo told him that all Corbitt needed to do was probate the will or ask the judge to set his mother's house aside from the proceedings in order to sell it. In the meantime, the Keathleys still believed that they would close on the house by the June 1 deadline and, according to Frank Keathley, sold their home, were approved for a loan to purchase the house, and notified the parties that they were ready to close. Frank Keathley stated that, at that time, he was informed by Carroll Bobo that Corbitt had not obtained clear title to Ruth's house, but was not told about the title dispute between Corbitt and his father and brother. The closing did not occur on June 1, and the Keathleys sought and purchased another property in September of 2004. On January 31, 2006, Corbitt informed the Keathleys that he had cured the objections in the title commitment and was prepared to close on Ruth's house in seven days.

On February 3, 2006, the Keathleys filed suit against Corbitt and the Bobos, alleging violations of the Deceptive Trade Practices Act (DPTA), breach of contract, common law and statutory fraud, and negligent misrepresentation. More specifically, the Keathleys claimed that they suffered damages because Corbitt was unable to complete the sale and the Bobos failed to inform

2

them of the title problems. Corbitt filed a counterclaim against the Keathleys, alleging breach of contract for failing or refusing to close in accordance with the contract once he had cured the title objections. Corbitt and the Bobos then filed both traditional and no evidence motions for summary judgment.[1] After a hearing, the trial court granted Corbitt's and the Bobos' motions for summary judgment, rendered a take nothing judgment against the Keathleys, and awarded Corbitt and the Bobos attorneys fees.[2] This appeal followed.

## STANDARD OF REVIEW

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense or, more specifically, prove each essential element of that defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *The Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

After adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense. TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance

---

[1] Corbitt and the Bobos subsequently amended their traditional and no evidence motions for summary judgment. All references in this opinion to their motions for summary judgment are to the amended motions.

[2] Although the judgment does not specifically mention Baker's counterclaim for breach of contract, the judgment contains a Mother Hubbard clause denying all relief not expressly granted. Further, the judgment includes unequivocal language that indicates finality by stating that "[t]his Judgment finally disposes of all parties and claims and is appealable." Thus, the judgment is final, and we have jurisdiction over this appeal. *See In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex. 2005).

with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.–Houston [1st Dist.] 1999, no pet.). We review a no evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See id.* at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See id.*

In both traditional and no evidence summary judgment motions, we review the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order granting summary judgment does not specify the grounds relied on for the ruling, we will affirm if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). When a party moves for both a traditional and a no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standard of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the no evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id.*

## LEGAL SUFFICIENCY OF THE NO EVIDENCE MOTIONS FOR SUMMARY JUDGMENT

As part of their first issue, the Keathleys contend that portions of Corbitt's and the Bobos' no evidence summary judgment motions are legally insufficient. More specifically, they argue that the motions fail to identify elements of their causes of action that are unsupported by evidence as

4

required by rule 166a(i) of the Texas Rules of Civil Procedure.

**Applicable Law**

Summary judgments must stand on their own merits. ***Cuyler v. Minns***, 60 S.W.3d 209, 212 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). As set forth previously, a no evidence motion for summary judgment must state the elements as to which the movant contends there is no evidence. *See **Callaghan Ranch, Ltd. v. Killam***, 53 S.W.3d 1, 3 (Tex. App.–San Antonio 2000, pet. denied). The motion must be specific in challenging the evidentiary support for an element of a claim or defense; conclusory motions or general no evidence challenges to an opponent's case are not authorized. ***Id.*** If a no evidence motion for summary judgment is not specific in challenging a particular element or is conclusory, the motion is legally insufficient as a matter of law and may be challenged for the first time on appeal. *Id*.; *see also **Crocker v. Paulyne's Nursing Home, Inc.***, 95 S.W.3d 416, 419 (Tex. App.–Dallas 2002, no pet.); ***Cuyler***, 60 S.W.3d at 213.

**Analysis**

In special exceptions to Corbitt's and the Bobos' no evidence motions for summary judgment, the Keathleys complained to the trial court that four paragraphs of Corbitt's motion (Nos. 28, 29, 33, and 43) and three paragraphs of the Bobos' motion (Nos. 30, 31, and 43) failed to clearly identify the grounds upon which summary judgment was urged. The trial court denied the Keathleys' special exceptions.

In paragraph 29 of Corbitt's supplement to his no evidence motion for summary judgment and paragraph 31 of the Bobos' no evidence motion, Corbitt and the Bobos allege that the Keathleys cannot produce evidence that Corbitt and the Bobos committed a wrongful, false, misleading or deceptive act or that Corbitt's and the Bobos' actions were a producing cause of the Keathleys' damage. By these allegations, Corbitt and the Bobos identified which elements of the Keathleys' DTPA claims had no evidentiary support. *See **Killam***, 53 S.W.3d at 3. Consequently, regarding the challenged elements of the Keathleys' DTPA claims, Corbitt's paragraph 29 and the Bobos' paragraph 31 are specific and, thus, legally sufficient.

In paragraph 28 of Corbitt's no evidence motion and paragraph 30 of the Bobos' no evidence motion, they allege that there is no evidence of one or more elements on which the Keathleys have the burden of proof under the DTPA. In paragraph 43 of Corbitt's and the Bobos' no evidence

motions, they assert that there is no evidence of one or more elements of breach of contract on which the Keathleys have the burden of proof. In paragraph 33 of Corbitt's no evidence motion under a section regarding a misrepresentation claim under the DTPA, Corbitt simply asserts that there is no evidence of any violation of subsection 17.46(b)(19) of the DTPA. None of these contentions by Corbitt or the Bobos identify the specific elements for which they contend there is no evidence. These paragraphs are, at most, general no evidence challenges to the Keathleys' DTPA causes of action. *See id.* Moreover, paragraph 33 of Corbitt's no evidence motion is conclusory. *See id.*

Because these paragraphs in Corbitt's and the Bobos' no evidence motions for summary judgment do not specifically challenge a particular element of the Keathleys' DTPA causes of action, and paragraph 33 of Corbitt's motion is also conclusory, these contentions are legally insufficient to support their no evidence motions. *See id.* Thus, we conclude that paragraphs 28, 33, and 43 of Corbitt's no evidence motion and paragraphs 30 and 43 of the Bobos' no evidence motion are legally insufficient and that the trial court erred in denying the Keathleys' special exceptions regarding these paragraphs. Therefore, in our review of Corbitt's and the Bobos' no evidence motions for summary judgment, we will not consider the assertions made in these paragraphs in support of the motions.

We overrule that portion of the Keathleys' first issue regarding paragraph 29 of the supplement to Corbitt's no evidence motion and paragraph 31 of the Bobos' no evidence motion. We sustain that portion of the Keathleys' first issue regarding paragraphs 28, 33, and 43 of Corbitt's no evidence motion, and paragraphs 30 and 43 of the Bobos' no evidence motion.

### OBJECTIONS TO EVIDENCE ATTACHED TO THE TRADITIONAL MOTIONS FOR SUMMARY JUDGMENT

As part of their second issue, the Keathleys argue that the trial court erred in denying their objections to portions of the evidence supporting Corbitt's and the Bobos' traditional motions for summary judgment. An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). Here, the Keathleys do not provide any argument or citations to authorities to demonstrate why the trial court erred in denying their objections. The Keathleys' argument consists only of conclusory statements that they filed objections to Corbitt's and the Bobos' summary judgment evidence, that the trial court denied their objections, and that they reurge those objections on appeal. Because the

6

Keathleys have failed to provide an adequate substantive analysis of this issue, they have presented nothing for our review. *See* TEX. R. APP. P. 38.1(i). Therefore, we overrule that portion of the Keathleys' second issue regarding the trial court's order denying their objections to Corbitt's and the Bobo's traditional motions for summary judgment.

**THE KEATHLEYS' CAUSES OF ACTION**

In their first issue, the Keathleys argue that the trial court erred in granting Corbitt's and the Bobos' no evidence motions for summary judgment. In their second issue, the Keathleys argue that the trial court erred in granting Corbitt's and the Bobos' traditional motions for summary judgment. Pursuant to the standard of review, we first examine each cause of action alleged by the Keathleys to determine if they produced more than a scintilla of evidence supporting the challenged elements. *See Ridgway*, 135 S.W.3d at 600. If the Keathleys failed to produce more than a scintilla of evidence as to each such element, we do not review the traditional motions for summary judgment. *See id.* However, if the Keathleys produced more than a scintilla of evidence as to any cause of action, we examine whether the trial court properly granted Corbitt's and the Bobos' traditional motions for summary judgment as to each such cause of action.

**DECEPTIVE TRADE PRACTICES ACT**

As a portion of their first issue, the Keathleys argue that they produced sufficient evidence to defeat Corbitt's and the Bobos' no evidence motions for summary judgment for violations of the DTPA based on false representations related to goods or services, false representations related to an agreement, failure to disclose information concerning goods or services, and unconscionable conduct. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (12), (24), § 17.50(a)(3) (Vernon Supp. 2008).

**Applicable Law**

A consumer may recover damages incurred as a result of another's false, misleading, or deceptive acts or practices. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon Supp. 2008). False, misleading, or deceptive acts or practices include representing that goods or services have characteristics or benefits which they do not have and representing that an agreement confers or

7

involves rights or obligations which it does not have or involve. *Id.* § 17.46(b)(5), (12). It also includes failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose such information was intended to induce the consumer into a transaction and the consumer would not have entered into the transaction had the information been disclosed. *Id.* § 17.46(b)(24). To prevail on a claim for failure to disclose under the DTPA, the consumer must prove that the defendant knew information regarding the goods or services, the information was not disclosed, there was an intent to induce the consumer to enter into the transaction through the failure to disclose, and the consumer would not have entered into the transaction had the information been disclosed. *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.–Fort Worth 2006, no pet.). Mere nondisclosure of material information is not enough to establish an actionable DTPA claim. *Id.*

A consumer may recover actual damages for any unconscionable action or course of action that is the producing cause of such damages. TEX. BUS. & COM. CODE ANN. § 17.50(a)(3) (Vernon Supp. 2008). An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5) (Vernon Supp. 2008). Unconscionability is an objective standard for which scienter is irrelevant. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998). To prove an unconscionable action, a consumer must show that the defendant's acts took advantage of his lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'" *Id.* (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex.1985)).

Mere breach of contract, without more, does not violate the DTPA. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). But when representations are made outside the contract, a violation of the DTPA may occur. *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 390 (Tex. App.–Texarkana 2003, pet. denied). Whether a breach of contract rises to the level of a misrepresentation sufficient to trigger the DTPA is a fact driven inquiry that, once the facts are ascertained, is a question of law. *Id.* at 389. When a representation by a defendant causes no harm itself but instead the injury or damage was caused by the breach of contract, that injury is governed by contract law, not the DTPA. *See Crawford v. Ace*

8

***Sign, Inc.***, 917 S.W.2d 12, 14-15 (Tex. 1996).

**Violation of Sections 17.46(b)(5), (12)**

In their brief, the Keathleys argue that they presented evidence that Corbitt's and the Bobos' representations violated the DTPA. The Keathleys contend that these violations included

1. that Corbitt owned Ruth's house;

2. that Corbitt was Ruth's heir to the property;

3. that after probating the will, Corbitt would be ready to convey the property;

4. that probating the will would not take long;

5. that Corbitt would be able to close once the Keathleys received loan approval;

6. that if the Keathleys arranged a bridge loan and waived the financing contingency, the Keathleys would be able to complete the purchase by the June 1, 2004 closing date; and

7. that if the closing was delayed, the Keathleys would be able to move in on a temporary rental agreement.

*See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (12). The Keathleys also presented evidence of damages they incurred as a result of the alleged violations. Corbitt and the Bobos contend that these representations are no evidence of a false, misleading, or deceptive act or practice under the DTPA. Instead, they argue that these statements are mere representations that a contract will be performed. *See **Formosa Plastics Corp. USA***, 960 S.W.2d at 46.

Other than Corbitt's and the Bobos' representation regarding a temporary rental agreement, their representations arise from the contract and simply outline Corbitt's promise to perform pursuant to that contract. *See **id.*** Regarding the representation that the Keathleys could reside on the property under a temporary rental agreement, the Keathleys presented no evidence that this statement was false or that they requested a temporary rental agreement after they determined that the closing would not occur. Because the Keathleys presented no evidence that Corbitt's and the Bobos' representations were false or related to more than a mere breach of contract, we conclude that these representations do not rise to the level of violations of subsections 17.46(b)(5) and (12) of the DTPA.

**Violation of Subsections 17.46(b)(24) and 17.50(a)(3)**

The Keathleys also argue that they presented evidence that, shortly after entering into the contract, Corbitt and the Bobos became aware that Corbitt would not be able to convey clear title by the closing date, and that Corbitt's father and brother refused to cooperate so that Ruth's property

9

could be timely conveyed to the Keathleys. The Keathleys' allegations focus on the will contest between Corbitt and his relatives and his inability to convey Ruth's house so that the closing could occur on June 1, 2004. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(24), § 17.50(a)(3). According to the evidence presented by Corbitt and the Bobos, however, this information was not discovered until after the Keathleys agreed to purchase Ruth's house and entered into the contract. The parties became aware that the trust held title to Ruth's house only after the title commitment was issued. Because Corbitt and the Bobos did not have this information at the time the Keathleys entered into the contract to purchase Ruth's home, they could not have failed to disclose it in order to induce the Keathleys to enter into the contract. The Keathleys also failed to produce evidence that Corbitt or the Bobos took advantage of their lack of knowledge regarding Corbitt's inability to convey clear title or the title dispute to a grossly unfair degree. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(3). Because the Keathleys presented no evidence that Corbitt's or the Bobos' failed to disclose information to induce them to enter into the contract or took advantage of their lack of knowledge to a grossly unfair degree, we conclude that the complained of actions do not support a cause of action under subsections 17.46(b)(24) and 17.50(a)(3) of the DTPA.

## Survival of DTPA claims against the Bobos

Finally, the Keathleys argue that the Bobos were not parties to the contract, and thus, the DTPA causes of action should survive against them. This contention ignores the fact that the Bobos were Corbitt's agents in the contract negotiations. If the representations complained of by the Keathleys supported a DTPA cause of action against Corbitt, the Bobos would likewise have potential liability for their representations under the DTPA. *See **Miller v. Keyser***, 90 S.W.3d 712, 715-17 (Tex. 2002); ***Light v. Wilson***, 663 S.W.2d 813, 815 (Tex. 1983) (Spears, J., concurring). But because the complained of representations support only a breach of contract action against Corbitt, these same representations cannot support a DTPA cause of action against the Bobos.

## Conclusion

The Keathleys failed to produce any evidence that Corbitt or the Bobos made false representations related to goods or services, false representations related to an agreement, failed to disclose information concerning goods or services, or committed unconscionable acts. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (12), (24), § 17.50(a)(3). Therefore, the trial court did not err in

granting Corbitt's and the Bobos' no evidence motions for summary judgment regarding violations of the DTPA. Accordingly, we overrule that portion of the Keathleys' first issue regarding the DTPA causes of action. Because the trial court did not err in granting the no evidence motions as to the Keathleys' DTPA claims, we do not address the portion of the Keathleys' second issue regarding Corbitt's and the Bobos' traditional motions for summary judgment related to those claims. *See Ridgway*, 135 S.W.3d at 600.

## NEGLIGENT MISREPRESENTATION

As a portion of their first issue, the Keathleys argue that they produced sufficient evidence to defeat Corbitt's and the Bobos' no evidence motions for summary judgment for negligent misrepresentation.

### Applicable Law

The elements of a negligent misrepresentation claim are that (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Jeffries v. Pat A. Madison, Inc.*, 269 S.W.3d 689, 691 (Tex. App.–Eastland 2008, no pet.). Negligent misrepresentation claims frequently arise when the parties have a relationship, but a plaintiff need not prove privity of contract. *Id.* In fact, negligent misrepresentation claims are not generally available when a contract is in force between the parties. *Agillion, Inc. v. Oliver*, 114 S.W.3d 86, 89 (Tex. App.–Austin 2003, no pet.).

### Analysis

The Keathleys argue that the same representations by Corbitt and the Bobos as alleged in their claims for violations of the DTPA support their claims for negligent misrepresentation. However, we have held that all but one of the alleged representations merely outline Corbitt's promise to perform pursuant to the contract. *See Agillion, Inc.*, 114 S.W.3d at 89. Regarding the representation that the Keathleys could reside on Ruth's property under a temporary rental agreement, the Keathleys presented no evidence that this statement was false. *See Jeffries*, 269

11

S.W.3d at 691.  Although the Keathleys presented evidence that the contract did not timely close, they never produced evidence that they requested a temporary rental agreement once they determined that the closing would not occur.  Because the Keathleys presented no evidence that the representations made by Corbitt and the Bobos were false or were not related to the contract, the trial court did not err in granting Corbitt's and Bobos' no evidence motions for summary judgment regarding negligent misrepresentation. *See id.* Thus, we overrule that portion of the Keathleys' first issue regarding their negligent misrepresentation cause of action. Because the trial court did not err in granting the no evidence motions as to the Keathleys' negligent misrepresentation claims, we do not address that portion of the Keathleys' second issue regarding Corbitt's and the Bobos' traditional motions for summary judgment related to those claims. *See **Ridgway**,* 135 S.W.3d at 600.

**BREACH OF CONTRACT**

As a portion of their first issue, the Keathleys contend that they produced sufficient evidence to defeat Corbitt's and the Bobos' no evidence motions for summary judgment for breach of contract.  As a portion of their second issue, the Keathleys argue that in Corbitt's traditional motion for summary judgment, he, at best,  raised a fact issue regarding whether the contract terminated and whether his offer to close was timely.

**Applicable Law**

The elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages caused by the breach.  ***Roof Sys., Inc. v. Johns Manville Corp.***, 130 S.W.3d 430, 442 (Tex. App.–Houston [14th Dist.] 2004, no pet.).  Even if a jury determines that the plaintiff suffered no actual pecuniary loss from a breach, the plaintiff still would be entitled to nominal damages. ***Gilmore v. SCI Texas Funeral Serv., Inc.***, 234 S.W.3d 251, 259 (Tex. App.–Waco 2007, pet. denied).  When a party fails or refuses to perform an act that it expressly promised to do, that party breaches the contract.  ***Roberts v. Clark***, 188 S.W.3d 204, 209 (Tex. App.–Tyler 2002, pet. denied).  In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the contract. ***Id.*** at 210.  We examine the entire contract and give effect to all provisions of the contract so that none will be rendered meaningless.  ***Id.***  If the

contract can be given a certain or definite legal meaning, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.* Even if a contract does not specify a time within which a party must fulfill a condition precedent, performance still must occur within a reasonable time. *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 634 (Tex. App.–Austin 1992, writ denied).

## No Evidence Motion for Summary Judgment

Regarding the Bobos' no evidence motion for summary judgment for breach of contract, the Bobos were Corbitt's agents. As such, the Bobos are not personally liable under the contract. *See Eppler, Guerin & Turner, Inc. v. Kasmir*, 685 S.W.2d 737, 738 (Tex. App.–Dallas 1985, writ ref'd n.r.e.). Therefore, the trial court did not err in granting the Bobos' no evidence motion for summary judgment regarding the Keathleys' breach of contract claim.

Regarding Corbitt's no evidence motion for summary judgment, the Keathleys agreed to purchase, and Corbitt agreed to sell, the home owned by Ruth Baker before she died. Before the closing date, the parties received a title policy commitment stating that title to the property was vested in The Bobby H. Baker and Ruth E. Baker Revocable Living Trust. The title commitment further contained a Schedule C title exception requiring a copy of the trust agreement and information as to the status of Ruth Baker's interest in the property. The title commitment indicated that, upon receipt of this information, additional requirements would be necessary. The Keathleys presented evidence that they sold their home, were approved for a loan to purchase the house, and notified the parties that they were ready to close. However, the Keathleys were informed that Corbitt had not obtained clear title to Ruth's house. Although Corbitt eventually obtained clear title to the property, he was not able to close at or near the original closing date of June 1, 2004. Regarding damages, the Keathleys presented evidence of pecuniary losses due to their attempt to purchase the property, including inspections, traveling expenses, appraisals, earnest money, and fee options. Thus, the Keathleys presented evidence of a contract, their tendered performance, Corbitt's failure to perform, and damages caused by the breach. Because the Keathleys presented more than a scintilla of probative evidence to raise a genuine issue of material fact, the trial court erred in granting Corbitt's no evidence motion for summary judgment regarding the Keathleys' breach of contract cause of action.

13

**Traditional Motion for Summary Judgment**

In his traditional motion for summary judgment, Corbitt raises two affirmative defenses. First, Corbitt argues that the contract terminated prior to the specified closing date pursuant to paragraphs 4A and 6D of the contract. Paragraph 4A of the contract states that the portion of the sales price not payable in cash would be paid through third party financing, or through one or more third party mortgage loans. The paragraph also stated that if the property does not satisfy the lenders' underwriting requirements for the loan, the contract would terminate. In his motion, Corbitt stated that there was no evidence that the Keathleys submitted the title commitment to a lender for consideration or that the property satisfied any lender's underwriting requirements. However, Corbitt presented no evidence that the Keathleys did not obtain third party financing. On the other hand, the Keathleys presented evidence that they were approved for a bank loan to purchase the property.

Regarding paragraph 6D of the contract, the Keathleys were given five days after receiving the title commitment to object in writing to defects, exceptions, or encumbrances to the title. The Keathleys' failure to object within the time allowed constitutes a waiver of their right to object, except that the requirements in Schedule C of the title commitment could not be waived. Corbitt was obligated to cure the timely objections of the Keathleys or any third party lender and, if such objections were not cured within the time allowed, the contract would terminate. Regarding the title objections, Corbitt presented no evidence that the Keathleys objected to the title and, in fact, the Keathleys acknowledged that they did not object to any aspect of the title. The title company listed some Schedule C objections that, pursuant to the contract, could not be waived by the Keathleys. However, there is no evidence that Corbitt failed to cure those objections, specifically to give the title company a copy of the trust agreement and information as to Ruth's interest in the property. Because there is no evidence that the Keathleys failed to obtain third party financing or that Corbitt failed to cure any title objections, Corbitt failed to conclusively establish his affirmative defense. *See **Rhone-Poulenc, Inc.***, 997 S.W.2d at 223; ***The Ryland Group, Inc.***, 924 S.W.2d at 121.

Second, Corbitt argued that his offer to close more than eighteen months after the initial closing date was evidence that he performed his duties according to the contract and did not breach it. But even if a contract does not specify a time within which a party must fulfill a condition precedent, performance still must occur within a reasonable time. *See **HECI Exploration Co.***, 843

14

S.W.2d at 634. What is reasonable depends on the facts and circumstances as they existed at the date of the contract. ***Cherco Prop., Inc. v. Law, Snakard & Gambill***, 985 S.W.2d 262, 266 (Tex. App.–Fort Worth 1999, no pet.). Factors include the nature and character of the action and the difficulty of accomplishing it, as well as the purpose of the agreement. ***Pearcy v. Envtl. Conservancy of Austin and Cent. Tex., Inc.***, 814 S.W.2d 243, 246 (Tex. App.–Austin 1991, writ denied). Where the material facts are undisputed, the question of what is a reasonable time is a matter of law. ***Id.***

Here, Corbitt was forced to file a declaratory judgment action to establish clear title to Ruth's property. However, the action was not resolved until over a year after closing, and Corbitt did not inform the Keathleys that he was ready to close until January of 2006. Even accepting Corbitt's difficulty with obtaining clear title, an eighteen month delay in a real estate transaction could be seen as unreasonable. *See **Cherco Prop., Inc.***, 985 S.W.2d at 266. By presenting evidence that he agreed to perform under the contract more than eighteen months after the original closing date, Corbitt did no more than create a fact issue as to whether his performance was timely. Because Corbitt failed to conclusively prove his affirmative defenses, the trial court erred in granting Corbitt's traditional motion for summary judgment regarding the Keathleys' breach of contract cause of action.

## Conclusion

We sustain that portion of the Keathleys' first and second issues regarding their breach of contract claim against Corbitt. However, we overrule that portion of the Keathleys' first issue regarding their breach of contract cause of action against the Bobos. Accordingly, we do not address that portion of the Keathleys' second issue regarding the Bobos' traditional motion for summary judgment related to the Keathleys' breach of contract cause of action. *See **Ridgway***, 135 S.W.3d at 600.

### COMMON LAW AND STATUTORY FRAUD

As part of their first issue, the Keathleys argue that they presented sufficient evidence to defeat Corbitt's and the Bobos' no evidence motions for summary judgment for common law and statutory fraud.

## Applicable Law

The elements of a cause of action for common law fraud are that (1) the defendant made a

15

material representation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *Ins. Co. of N. Am.*, 981 S.W.2d at 674. The elements of statutory fraud under section 27.01 of the Texas Business and Commerce Code are essentially identical to the elements of common law fraud, except that section 27.01 does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages. TEX. BUS. & COM. CODE ANN. § 27.01 (Vernon 2009); *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 867 (Tex. App.–Austin 2001, pet. denied). Under both common law and statutory fraud, the plaintiff's reliance must be reasonable and justified. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. App.–Houston [14th Dist.] 2006, no pet.). Further, a pure expression of opinion will not support an action for fraud. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995).

Silence is equivalent to a false representation where circumstances impose a duty to speak and one nevertheless deliberately remains silent. *Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App.–Texarkana 2000, pet. denied). In other words, for there to be fraud by nondisclosure, there must be a duty to disclose. *Id.* A duty to disclose may arise in four situations: (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; or (4) where one makes a partial disclosure and conveys a false impression. *Id.*

## No Evidence Motion for Summary Judgment

Regarding the claim for common law fraud, Corbitt and the Bobos argue that the Keathleys produced no evidence that they knew the alleged representations were false, or that the alleged representations were recklessly made, made as a positive assertion, or made with the intent to induce reliance. Further, regarding the claim for statutory fraud, Corbitt contends the Keathleys produced no evidence that he made any representation that he knew to be false, that he intended the Keathleys to act on, or that caused them injury. The Bobos argue that the Keathleys produced no evidence that they made any representation which was intended to induce the Keathleys to enter into the contract

16

or that the Keathleys' reliance on any such representation was likely or justified.

The Keathleys produced evidence that they were told by the Bobos that Corbitt was the owner of the property and had the authority to sell it. According to the Keathleys, Corbitt stated that he had inherited Ruth's house. Corbitt and the Bobos told the Keathleys that Ruth's will would need to be probated, but that it would not be difficult. Subsequently, Corbitt and the Bobos realized that obtaining clear title would, indeed, be difficult. Yet, according to the Keathleys, Corbitt and the Bobos never disclosed this information to them. Further, the Keathleys presented evidence that this information was not disclosed so that the Keathleys would not terminate the contract. Specifically, after Frank Keathley received a copy of the title commitment showing that the property was owned by the trust, he questioned Carroll Bobo and was told that Corbitt would have the title cleared before the closing date. Frank Keathley stated that Carroll Bobo presented several possible scenarios regarding the probate of Ruth's will that would all result in title being cleared before closing. Frank Keathley stated that he relied on these representations and presented evidence of damages incurred as a result including inspections, traveling expenses, appraisals, earnest money, and fee options.

Thus, the Keathleys presented evidence that Corbitt's and the Bobos' representations regarding ownership of the property and the time and effect of the probate of Ruth's will were material, false, reckless, positive, and made with the intention that the Keathleys rely upon them. The Keathleys also presented evidence that they relied on the representations and were damaged as a result. *See Lesikar*, 33 S.W.3d at 299; *Ins. Co. of N. Am.*, 981 S.W.2d at 674. Moreover, Corbitt and the Bobos had a duty to disclose because they voluntarily disclosed partial information regarding ownership of the property and the probate of the will, but failed to disclose the title dispute or new information regarding the title dispute that made their earlier representations misleading or untrue. *See Lesikar*, 33 S.W.3d at 299. Because the Keathleys presented more than a scintilla of probative evidence to raise a genuine issue of material fact, the trial court erred in granting Corbitt's and the Bobos' no evidence motions for summary judgment regarding the Keathleys' common law and statutory fraud causes of action.

**Traditional Motion for Summary Judgment**

A motion for summary judgment must expressly present the grounds upon which it is made. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Moreover, a motion

must stand or fall on the grounds expressed in the motion. *Id.* Corbitt's and the Bobos' traditional motions for summary judgment include arguments, authorities, and evidence on the Keathleys' other claims but not on their claims for common law and statutory fraud. Therefore, the trial court erred in granting Corbitt's and the Bobos' traditional motions for summary judgment regarding the Keathleys' common law and statutory causes of action.

**Conclusion**

Because the no evidence and traditional motions for summary judgment were erroneously granted, we sustain that portion of the Keathleys' first and second issues regarding the common law and statutory fraud causes of action.

## ATTORNEY'S FEES

In their third issue, the Keathleys argue that the trial court erred in awarding attorney's fees to Corbitt and the Bobos. Because we have sustained the Keathleys' first and second issues as to the breach of contract and common law and statutory fraud causes of action, the trial court should be given an opportunity to reconsider its award of attorney's fees when it renders a new judgment. *See Bruni v. Bruni*, 924 S.W.2d 366, 368-69 (Tex. 1996). We therefore conclude that the award of attorney's fees should be reversed and the issue remanded to the trial court for further proceedings. *See Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 7 (Tex. App.–Austin 2007, pet. denied).

## CONCLUSION

We have sustained in part and overruled in part the Keathleys' first and second issues. Accordingly, we *affirm* the trial court's judgment that the Keathleys take nothing against Corbitt and the Bobos regarding their DTPA and negligent misrepresentation causes of action. However, we *reverse* the trial court's judgment regarding the Keathleys' breach of contract, common law fraud, and statutory fraud causes of action against Corbitt and the Bobos, and its award of attorney's fees, and *remand* this case for further proceedings.

_\_\_ BRIAN HOYLE \_\_\_
Justice

Opinion delivered June 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)