# United States Court of Appeals for the Fifth Circuit

———————

No. 22-11213

———————

United States Court of Appeals
Fifth Circuit

**FILED**

January 11, 2024

Lyle W. Cayce
Clerk

The Pointe Dallas, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Underwriters at Lloyd's London; Ironshore Europe
DAC,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-855

———————————————————————

Before Wiener, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Plaintiff–Appellant The Pointe Dallas, L.L.C. ("The Pointe") brings contract, tort, and statutory claims against Defendant–Appellees Underwriters at Lloyd's London and Ironshore Europe DAC ("Underwriters"), in conjunction with Underwriters' denial of insurance benefits after The Pointe suffered a fire. The district court granted summary

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-11213

judgment in favor of Underwriters on all claims. We reverse in part and remand for further proceedings.

--

The Pointe owns and operates a seventy-one-unit apartment complex in Dallas, Texas. Each of the units is equipped with at least three ceiling-mounted smoke detectors. When a detector senses smoke, that particular device emits an alarm, but no other alarms are triggered. The detectors do not send a signal to any public or private fire monitoring system upon alarm.

In September 2018, The Pointe worked with an insurance broker to submit a Commercial Insurance Application for coverage of its apartment building to Underwriters Underwriters negotiated with the broker and issued Policy No. B1180D170895-084, with an effective date of October 16, 2018. An underwriting inspection occurred in early 2019. The Pointe was notified that, in order to maintain coverage, it needed to provide proof that its electrical panels had been inspected and that fire extinguishers had been installed. The Pointe complied with these requests. After the initial policy expired, Underwriters issued another policy to The Pointe, No. B1180D190004-043 ("the Policy"), effective October 16, 2019.

Both policies included a Protective Safeguards Endorsement ("PSE"), which looked like this, in relevant part:

No. 22-11213

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT
CAREFULLY.

### PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
|  |  |  |
|  |  |  |
| Describe Any "P-9": | | |
|  |  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations or the Commercial Property Insurance Schedule.

A. The following is added to the Commercial Property Conditions:

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
2. The protective safeguards to which this endorsement applies are identified by the following symbols:

"P-2" Automatic Fire Alarm, protecting the entire building, that is:
a. Connected to a central station; or
b. Reporting to a public or private fire alarm station.

"P-9", the protective system described in the Schedule.

Also attached to both policies was a Commercial Property Insurance Schedule ("the CPI Schedule"), which included the following:



On April 16, 2020, The Pointe submitted a Property Loss Notice to Underwriters, indicating that the building had suffered a fire which had damaged twelve units. Underwriters investigated the loss and found that The Pointe had individual smoke detectors in each apartment, but no automatic fire alarm connected to a central station. It concluded that The Pointe had failed to satisfy the PSE's requirements, and therefore refused to cover the losses. The Pointe filed suit in Texas state court, bringing claims for breach of contract, equitable estoppel, fraud, and violations of the Texas Prompt Payment of Claims Act and Chapter 541 of the Texas Insurance Code.

No. 22-11213

Underwriters removed the case pursuant to 28 U.S.C. § 1332(a), and then moved for summary judgment, contending that The Pointe's failure to employ the appropriate protective safeguards precluded its recovery on all claims as a matter of law. The district court agreed and granted Underwriters' motion. The Pointe filed a timely notice of appeal.

--

On appeal, a district court's grant of summary judgment is reviewed de novo. *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 273 (5th Cir. 2021). Summary judgment is proper where the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and reasonable inferences are construed in favor of the nonmovant. *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (quoting *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017)). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

--

The district court concluded that Underwriters were entitled to judgment as a matter of law because The Pointe did not employ the protective safeguards required by the Policy. The Pointe asserts that this was error, because (1) the PSE table is empty and thus the Policy does not require any safeguards, or, in the alternative, (2) the language of the Policy's requirements is ambiguous and therefore it must be construed in favor of coverage.

Texas courts apply the general rules of contract construction to insurance policies. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) (citing *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464

(Tex. 1998)).[1] In interpreting an insurance policy, our "primary concern" is to "ascertain the parties' intent as expressed in the language of the policy" and to "give effect to all contractual provisions so that none will be rendered meaningless." *Id.* A policy is ambiguous if it is "reasonably susceptible [to] more than one meaning." *Id.* Ambiguous policies should be construed in favor of the insured. *Id.* "The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (quoting *Blaylock v. Am. Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex. 1982)).

The PSE states that, "[a]s a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above." But, as shown above, there is nothing filled out in the indicated table. The Pointe contends that the Policy thus does not require any protective safeguards, meaning that Underwriters erred in denying coverage on that basis. Alternatively, it asserts that its interpretation of the empty table is at least reasonable, rendering the Policy ambiguous and unenforceable.

An insurance policy, like a contract, should be read as a whole. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 159 (Tex. 2003). A review of The Pointe's Policy as a whole reveals that at least *some* protective safeguards were required. At the bottom of the table, the PSE states, "[i]nformation required to complete this Schedule, if not shown above, will be shown in the Declarations or the Commercial Property Insurance Schedule." Then, the CPI Schedule requires the property to have P–2 and P–9 as protective safeguards. Given that the PSE directs the reader to the CPI Schedule, it is

---

[1] In this diversity case, we apply the law of the forum state. *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 528 (5th Cir. 2023).

unreasonable for an insured—charged with knowing and understanding the terms of its policy—to fail to flip to that second document to see if anything is required. *See Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 983 (N.D. Tex. 2007) (citing *Heritage Manor of Blaylock Props., Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.–Dallas 1984, pet. denied)). Further, the language at the bottom of the table ("if not shown above") anticipates the table not being completed. And if protective safeguards were not required simply because the table in the PSE was not filled out, then the CPI Schedule would be made meaningless. The Pointe's interpretation thus goes against the fundamental rule of contract construction, which mandates that no policy language be rendered superfluous. *See Int'l Ins. Co.*, 426 F.3d at 291. Looking at the Policy as a whole "in light of the circumstances present when the contract was entered," the empty table in the PSE does not establish that no safeguards are required. *See id.* Additionally, because this construction of the PSE is not reasonable, the Policy is not ambiguous on this basis. *See In re Deepwater Horizon*, 470 S.W.3d 452, 468 (Tex. 2015) ("The ambiguity rule comes into play only if there is more than one reasonable interpretation of an insurance policy.").

Even if the Policy contemplates some required safeguards, The Pointe asserts that it is unclear what exactly those safeguards are. It interprets the Policy to require a "Fire Alarm: Local," meaning that the alarm needs to sound only at the place of detection, which did occur on the day of the fire. In contrast, Underwriters urge us to view the Policy as requiring an alarm "connected to a central station," or an offsite fire monitoring facility, which was not present at The Pointe. Simply advancing "conflicting interpretations" of a policy does not establish ambiguity. *TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365, 370 (5th Cir. 2004) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). Instead, to defeat

summary judgment, The Pointe's interpretation of the Policy must be shown to be *reasonable*. *See In re Deepwater Horizon*, 470 S.W.3d at 468.

As to The Pointe's construction, it was reasonable for The Pointe to consult the CPI Schedule to determine its responsibilities under the Policy. Underwriters themselves agree, earlier contending that it would have been unreasonable for The Pointe not to look to the CPI Schedule to find the Policy's requirements, given the empty PSE table. The CPI Schedule requires The Pointe to maintain "P2 – Fire Alarm: Local." We give contract terms their plain, ordinary meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1991). "Local" means "having a definite spatial form or location" or "of, relating to, or characteristic of a particular place: not general or widespread." *Local*, Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/local (last visited Nov. 15, 2023). We therefore interpret the plain language of "Fire Alarm: Local" as requiring an alarm that sounded in the particular place that it alerted. This is a reasonable construction of the CPI Schedule's language and the Policy's overall requirements.[2]

Underwriters instead focus on the PSE's definition of P–2 as requiring a connection to a central station. It asserts that the CPI Schedule's reference to "P2 – Fire Alarm: Local" is shorthand, and that it would have been unreasonable for the insured not to refer back to the full definition in the PSE, which requires a connection to a central station. As the district court found,

_____

[2] The Pointe also contends that, even if the definition of P–2 in the PSE controls over that in the CPI Schedule, it is impermissibly ambiguous because it does not define the terms "central station" and "private fire alarm station." Because we hold that The Pointe's interpretation of the Policy to require only a "Fire Alarm: Local" was reasonable, we do not reach this argument. We note, however, that undefined terms do not in themselves render policies ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. McMurray*, 342 F. App'x 956, 959 (5th Cir. 2009).

The Pointe had "a duty to read and comply with the policy terms," and the language of "Fire Alarm: Local" did not "eliminat[e] that obligation." But the PSE's definition of P–2 seems to conflict with the definition in the CPI Schedule: "P-2 Automatic Fire Alarm" differs from "P2 - Fire Alarm: Local." For example, a local alarm could sound at the premises but not at a central or private station. We find that fire alarms may sound and connect to a variety of locations at one time, but absent further information in the Policy, these fire alarms are mutually exclusive. Although Underwriters claim that the CPI Schedule was complementary to the PSE, the PSE is not merely a longer version, but rather a conflicting requirement. When provisions in a contract are internally contradictory, we "attempt to harmonize the two provisions and assume the parties intended every provision to have some effect." *Nexstar Broad., Inc. v. Fidelity Commc'ns Co.*, 376 S.W.3d 377, 381–82 (Tex. App.–Dallas 2012, no pet.) (citation omitted). But there is no way to harmonize two terms that embody conflicting requirements. Although Underwriters contend that The Pointe's interpretation "fails to satisfy the basic rules of contract interpretation" by reading the PSE language out of the Policy, their own construction would do the same to the CPI Schedule. And, as long as The Pointe's interpretation "is not itself unreasonable," it matters not that Underwriters' own interpretation is also reasonable and even possibly "the more likely reflection of the parties' intent." *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) (citation omitted). Given the two different descriptions of P–2, the Policy is not "worded [such] that it can be given a certain or definite legal meaning or interpretation." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).[3]

---

[3] Underwriters also maintain that The Pointe's interpretation is unreasonable because, even if "Fire Alarm: Local" supplants the more expansive definition in the PSE, the Policy unambiguously required the presence of two protective safeguards (P–2 and P–

No. 22-11213

Because the Policy is "reasonably susceptible of more than one meaning," depending on whether the PSE or the CPI is given more weight, we conclude that it is ambiguous. *See Int'l Ins. Co.*, 426 F.3d at 291. And because we must adopt "the construction that favors the insured," the district court's grant of summary judgment was in error. *See id.*

--

The district court held that, in the absence of contractual coverage, The Pointe's statutory claims failed as a matter of law. It declined to engage with these causes of action on the merits because it saw coverage—success on the breach of contract claim—as a prerequisite to recovery. This was incorrect as a matter of law. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) (detailing multiple exceptions to the general rule that an insured may not recover statutorily without a contractual right to benefits). Regardless, because we have found that the court's grant of summary judgment on The Pointe's contract claim was in error, we will remand the case to the district court for consideration of these claims as well. *See U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009) ("The district court did not reach this ground. Because the district court should have the opportunity to address the facts underpinning the claim . . . and make any necessary findings in the first instance, we do not reach this ground.").

The Pointe also brought tort claims against Underwriters for equitable estoppel and fraud. It alleges the inspector's failure to warn it about the need for a central alarm system was a material misrepresentation as to its coverage. The district court granted Underwriters' motion for summary judgment as

---

9), and The Pointe only had one: smoke detectors. However, it is possible that a single device might serve as both a smoke alarm and a fire alarm.

to these claims because it found that Underwriters had made no such misrepresentations. As an initial matter, we note that equitable estoppel is not a cause of action, as asserted by The Pointe, but instead a bar against a defendant raising a particular defense. *Torres–Aponte v. JP Morgan Chase Bank, N.A.*, 639 F. App'x 272, 274 (5th Cir. 2016) (quoting *Doe v. Roman Cath. Archdiocese of Galveston–Hous.*, 362 S.W.3d 803, 810 (Tex. App.-Houston [14th Dist.] 2012, no pet.)). Nevertheless, we will affirm the district court's holding because (1) the inspection occurred in conjunction with the 2019 Policy, not the 2020 Policy operative at the time of the fire; (2) the inspector had no duty to inform The Pointe of all possible issues with its coverage; and (3) The Pointe is charged with knowledge of its policy. *See Jeffries v. Pat A. Madison, Inc.*, 269 S.W.3d 689, 692 (Tex. App.-Eastland 2008, no pet.) ("[A] misrepresentation claim cannot stand when the party asserting the claim is legally charged with knowledge of the true facts.").

--

The district court erred in granting summary judgment in favor of Underwriters on the Pointe's contract and statutory claims, but not on its tort claims. We therefore REVERSE IN PART and REMAND the case for further proceedings consistent with this opinion.