COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| STOKES INTEREST, G.P., | § | No. 08-08-00326-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 143rd District Court |
| | § | |
| GEORGES SANTO-PIETRO, | § | of Reeves County, Texas |
| | § | |
| Appellee. | § | (TC # 08-05-19089-CVR) |
| | § | |

## **O P I N I O N**

This appeal stems from the trial court's enforcement of a contractual forum selection clause. Stokes Interest, G.P. filed suit in Reeves County against Georges Santo-Pietro (GSP) alleging a breach of warranty under the Deceptive Trade Practices Act as well as common law fraud and fraudulent misrepresentation. For the reasons that follow, we affirm.

## **FACTUAL BACKGROUND**

On August 8, 2006, Thermonomics, Inc. and GSP entered into an Agent Agreement containing a forum selection clause:

\* \* \* \* \*

**12. Choice of Law, Jurisdiction and Process.** The laws of the State of California shall govern this Agreement. Venue and jurisdiction shall be in Beverly Hills, California.[1]

The agreement recited that GSP held oil, gas and mineral leases which were identified in Exhibit A as (1) 320 acres located: All of the South ½, Section 28, Block C-8 P.S.L., Reeves County Texas, and (2) 320 acres located: All of the North ½, Section 19, Blk. C-8 P.S.L., Reeves County Texas. The agreement also recited that GSP wanted to sell the leases, along with leases and other oil and gas assets owned by Thermonomics and identified in Exhibit B, to be offered in a package to targeted prospective oil and gas production companies/operators. To effectuate that intent, GSP appointed Thermonomics as his agent. Thermonomics was granted the exclusive right during a 45-day period to offer the leases for sale to prospective buyers. Thermonomics agreed to pay GSP $37,500 as a non-refundable advance to be credited against the share of the gross proceeds to be distributed to GSP for any sale generated by Thermonomics. Thermonomics was also granted the right to renew the agreement for an additional 45 days by paying another $37,500 non-refundable advance fee. If no sale were consummated during the term of the contract, Thermonomics would forfeit the advances paid. Thermonomics paid the $75,000 advance fees[2] and consummated a sale of GSP's mineral interests to Chesapeake Exploration Limited Partnership. The sales agreement, dated October 18, 2006, lists the parties as Chesapeake and The Pecos Group, which is comprised of Thermonomics, GSP, Stokes, and Jeff Moralez, d/b/a/ Savana Oil and Gas. By their respective

---

[1] The contract was drafted by Steven Fodrie, President of Thermnomics. GSP is a resident of Beverly Hills, California.

[2] The record contains a document entitled "Disclosures, Acknowledgments, Consents" which is signed by Steven Fodrie, President of Thermonomics, and GSP. In paragraph 2, the parties acknowledge that Thermonomics paid a total of $75,000 in advances.

signatures:

> The Pecos Group represents and warrants that it has a full one hundred percent (100%) collective ownership interest in each of the ROW's,[3] totaling approximately eighty (80) miles, that are in full force and effect and that The Pecos Group has the right to sell and assign the ROW's into Chesapeake.

Stokes is the assignee of Thermonomics. It filed suit against GSP alleging damages arising from misrepresentations that he owned a full 100 percent working interest in his oil and gas leases when he knew he only owned a 75percent interest. The Chesapeake sale purportedly fell through because of these misrepresentations. Based on the venue provision in the Agent Agreement, the trial court dismissed the lawsuit.

## FORUM SELECTION

### Standard of Review

A motion to dismiss is the proper procedural mechanism for enforcing a forum selection clause. *Accelerated Christian Educ., Inc. v. Oracle Corp*., 925 S.W.2d 66, 70 (Tex.App.--Dallas 1996, no writ). Consistent with the standard of review we apply in reviewing motions to dismiss generally, we review dismissals predicated on forum selection clauses for an abuse of discretion. *See, e.g., My Café-CCC, Ltd. v. Lunchstop, Inc*., 107 S.W.3d 860, 864 (Tex.App.--Dallas 2003, no pet.). To the extent that our review involves contractual interpretation of a forum selection clause --a legal matter--the standard of review is *de novo*. *See Southwest Intelecom, Inc. v. Hotel Networks Corp*., 997 S.W.2d 322, 324 (Tex.App.--Austin 1999, pet. denied).

Traditionally, Texas state courts and federal courts used different analytical constructs to

---

[3] ROW is the acronym for pipeline right-of-way.

determine the enforceability of mandatory forum selection clauses.[4] *Phoenix Network Technologies (Europe) Ltd. v. Neon Systems, Inc.*, 177 S.W.3d 605, 611-14 (Tex.App.--Houston [1st Dist.] 2005, no pet.). But the Texas Supreme Court has now adopted the federal approach. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005); *In re Automated Collection Technologies, Inc.*, 156 S.W.3d 557, 558-59 (Tex. 2004); *In re AIU Ins. Co.*, 148 S.W.3d 109, 111-14 (Tex. 2004). Under the applicable legal standard, the trial court presumes that a mandatory forum selection clause is valid and enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *In re AIU Ins. Co.*, 148 S.W.3d at 111-12. Full effect is given absent a strong showing by the resisting party that the court should set aside the clause because (1) the clause is invalid based on such reasons as fraud, undue influence, or overweening bargaining power; or (2) enforcement would be unreasonable and unjust. *M/S Bremen*, 407 U.S. at 10-15, 92 S.Ct. at 1913-16; *In re AIU Ins. Co.*, 148 S.W.3d at 111-12. Enforcement of a forum selection clause would be unreasonable and unjust if (1) enforcement would contravene a strong public policy of the forum in which suit was filed, or (2) the balance of convenience is strongly in favor of litigation in the forum in which suit was filed, and litigation in the contractual forum would be so manifestly and gravely inconvenient to the resisting party that it effectively would be deprived of a meaningful day in court. *M/S Bremen*, 407 U.S. at 15-19, 92 S.Ct. at 1916-18; *In re AIU Ins. Co.*, 148 S.W.3d at 111-12.

---

[4] In a footnote, *Deep Water Slender Wells, Ltd. v. Shell Intern. Exploration & Production, Inc.*, defined a "mandatory forum-selection clause" as a contractual provision that requires certain claims to be decided in a forum or forums other than the forum in which the claims have been filed. 234 S.W.3d 679, 687 n.3 (Tex.App.--Houston [14th Dist.] 2007, pet. denied).

**Lack of Pleading**

Stokes first complains that dismissal was improper because GSP failed to file a formal motion to dismiss and his trial brief was insufficient to join the issue. GSP responds that Stokes waived any defect in the pleadings by his failure to object. We agree. During the hearing, the court announced its intention to treat the memorandum of law as a motion to dismiss because there was no separately filed motion. Stokes stood silent and the hearing continued. To preserve error, the complaint must be made to the trial court by a timely request, objection, or motion that states the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. TEX.R.APP.P. 33.1(a)(1)(A).

**Convenient Forum**

In Point of Error One, Stokes contends that the trial court should not have addressed *forum nonconviens* and that it incorrectly determined that California was a more convenient forum. Stated differently, Stokes claims that the issue was not properly before the court because GSP did not plead that California was a more convenient forum, nor did he offer any evidence. His argument is premised on the wrong legal standard. *Deep Water Slender Wells,* 234 S.W.3d at 692, *citing Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 793. Because the trial court presumes that a mandatory forum selection clause is valid and enforceable, GSP was not required to show that California was a more convenient forum. Stokes had the burden to demonstrate that (1) the clause was invalid due to fraud, undue influence, or overweening bargaining power; or (2) enforcement would be unreasonable and unjust. *M/S Bremen*, 407 U.S. at 10-15, 92 S.Ct. at 1913-16; *In re AIU Ins. Co.*, 148 S.W.3d at 111-12. Because it failed to do so, we overrule Point of Error One.

## Scope of the Forum Selection Clause

In Point of Error Two, Stokes challenges the forum selection clause as vague, narrow, and inapplicable. It argues that the tort causes of action alleged here arise out of the Chesapeake sales agreement and are not subject to the forum selection provision of the Agent Agreement. When a party seeks to enforce a mandatory forum selection clause, a court must determine whether the claims in question fall within the scope of that clause. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221-22 (5th Cir. 1998). The court bases this determination on the language of the clause and the nature of the claims that are allegedly subject to the clause. *Id.*

Stokes argues that since the forum selection clause in the Agent Agreement does not even identify the subject matter to which it applies, it should not "encompass claims from subsequent independent contracts and oral misrepresentations which are only tangentially related to the Agent Agreement." GSP counters that since the forum selection clause has no limiting language, it is all inclusive. He concludes that in the absence of some limiting language, the clause at issue can only be read to provide venue and for "all" claims arising out the agreement. We agree.

We next look to the nature of the claims that are subject to the clause. *Marinechance Shipping,* 143 F.3d at 222. Stokes' claims against GSP include breach of warranty under the DTPA and fraudulent misrepresentation under common law. Stokes argues that these claims are based on GSP's knowing misrepresentations in the sales agreement and are not subject to the forum selection provision of the prior Agent Agreement. The record belies these arguments.

In its original petition, Stokes claimed its actual damages included the $75,000 advance fees

paid to GSP in connection with the oil and gas leases.[5] The basis for payment of the advance fees is the Agent Agreement. The petition also alleged that as a proximate result of the misrepresentations, the sale of 72 acres of Stokes' oil and gas leases did not close. Sandy Stokes testified:

DIRECT EXAMINATION

Q: Are you suing for your 72 acres that you purchased in reliance on the representation to Mr. Morales [sic] by Mr. Pietro made after the Agency Agreement that he owned one hundred percent?

A: Yes, sir.

Jeff Moralez testified about the 72 acres as well:

DIRECT EXAMINATION

Q: Were you active with Mr. Stokes in acquiring the 72 acres that are being sued for in this case?

A: Yes, sir, very active.

* * * * *

Q: And activities in connection with the 72-acre lease that Mr. Stokes acquired subsequent to August 8th, 2006, where were those performed?

A: Here in Pecos, Texas, Reeves County.

* * * * *

CROSS EXAMINATION

Q: The 72 acres, is that referred to as the Voulgaris [sic] lease?

---

[5] Although the "Disclosures, Acknowledgments, Consents" instrument specifies that Thermonomics paid the money, Sandy Stokes testified at the hearing that he paid it. Mr. Stokes testified that there was a written assignment between Stokes Interests, G.P. and Thermonomics that was executed in 2008 but it was not tendered as an exhibit and it does not appear in the record.

A: That's correct.

Q: And do you realize that is attached to the Agency Agreement as an exhibit?

A: I do now.

Q: Okay. So what you're saying is the 72 acres was contemplated specifically in the Agency Agreement? Would you like to see your petition, sir?

A: Yes, sir.

* * * * *

Q: I refer to you the Agency Agreement, Exhibit A to the petition, dated August 8th, 2006. Does that appear to be a true and correct copy of the exhibit to your petition?

A: That's the agent agreement.

Q: Now I want to refer you to Exhibit B to that Agency Agreement. Does it specifically refer to 72.36 acres referred to as the voulgaris [sic] lease?

A: Yes. However --

Q: Thank you, sir. Now, what you said previously about the 72 acres not being a part of the Agency Agreement is not correct, is it?

A: Well, that's not true, because that lease we had acquired prior, and it expired, and once we got Mr. Pietro on board, we went and re-leased that property.

Q: Okay. But it was referred to specifically in the Agency Agreement dated August 8th, 2006?

A: We just read that, yes.

Although Mr. Stokes and Mr. Moralez spoke in terms of purchase and acquisition of the 72 acres after the Agent Agreement was executed, those 72 acres, known as the Volgaris lease, are listed in Exhibit B of the Agent Agreement as assets of Thermonomics. Only when confronted with Exhibit B did Moralez clarify that the lease had simply been renewed. And Exhibit B actually addressed the provisions for renewal:

1. 72.36 Acres referred to as the Volgaris Lease located: West part of the N/2, Sec 28, Blk. C-8 P.S.L.  This is Paid-Up 80% lease with 10% to the Land Owner and 10% to the State of Texas.  It is a 3 year primary term with a 2 year option at $300.00 per acre taken July 12th, 2006.

Moralez could not remember the date that the lease was renewed, but he claimed he had to pay $22,000 for it.  Simple multiplication informs us that pursuant to the terms of the lease, a renewal within the option period would cost $21,708 (72.36 acres X $300 per acre).

Clearly the basis for all of Stokes' claims stem from the Agent Agreement.   We overrule Point of Error Two and affirm the decision of the trial court.


July 28, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Guaderrama, Judge
Guaderrama, Judge, sitting by assignment