

# NUMBER 13-14-00490-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE PRIME INSURANCE COMPANY

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Perkes and Longoria
### Memorandum Opinion by Chief Justice Valdez[1]

RZQ, L.L.C., Hameed Quraishi, M.D., Rafath Quraishi, M.D., Aadam Quraishi, M.D., and Advanced Medical Imaging, L.L.C. (collectively "RZQ"), brought suit against Prime Insurance Company ("Prime") for negligence, breach of contract, violations of the Deceptive Trade Practices Act and the Texas Insurance Code, and breach of the duty of good faith and fair dealing in connection with Prime's handling of RZQ's commercial

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

property insurance claim after RZQ's medical facility was damaged in a storm. Through this original proceeding, Prime seeks to compel the trial court[2] to grant its motion to dismiss the lawsuit based on a forum-selection clause contained in the commercial property insurance policy at issue. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

In May 2011, RZQ purchased commercial property insurance from Prime for a medical imaging facility located at 1200 South Second Street in McAllen, Texas. The Prime insurance coverage was purchased through insurance agent Felipe Farias of the Felipe Farias Insurance Agency. The insurance policy covered the period of time from May 27, 2011 to May 27, 2012. RZQ paid the total premium of $81,226.57 in May 2011. On June 22, 2011, a storm struck McAllen, Texas causing property damage and loss to the insured property. RZQ filed a claim with Prime for building and business personal property losses, including damage to an MRI machine, totaling more than one and a half million dollars. RZQ later added claims for business income losses consisting of lost referrals, lost revenue, and "labor costs for keeping employees" attributable to the non-functional MRI machine. Prime did not pay RZQ's claims.

On June 24, 2013, RZQ brought suit against Prime in the 389th District Court of Hidalgo County, Texas for claims related to coverage under the insurance policy. Specifically, RZQ alleged that Prime failed to adequately investigate the claim, provided an "inaccurate and low ball estimate" to pay for a damaged MRI machine, and failed to return RZQ's phone calls. On December 27, 2013, Prime filed a motion to dismiss the

_____

[2] This original proceeding arises from trial court cause number C-38180-13-H in the 389th District Court of Hidalgo County, Texas, the Honorable Leticia Lopez presiding.

2

lawsuit based on a forum-selection clause in the insurance policy which required that suits under the policy be brought in the state of Utah.  The forum-selection clause in the policy provides:

SECTION X – CONSENT TO EXCLUSIVE JURISDICTION

The Insured understands and acknowledges that the Insurer conducts its business activities, including the underwriting, risk management, and claims services within the State of Utah.  The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in the State of Utah.  The Insured acknowledges that, by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy.  In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising between the parties related to any insurance coverage issues and any payments due to the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.

On January 27, 2014, Prime filed a supplemental motion to dismiss based on the forum-selection clause.  On June 17, 2014, RZQ filed a response to Prime's motion to dismiss.  The trial court held a hearing on Prime's motion to dismiss on June 18, 2014 and denied the motion to dismiss by written order issued that same day.  Prime filed a motion for reconsideration.  RZQ filed a response and a supplemental response to Prime's motion for reconsideration.  The trial court held a hearing on Prime's motion for reconsideration on August 21, 2014 and denied the motion for reconsideration by written order that same day.

This original proceeding ensued. By one issue, Prime contends that the trial court committed a clear abuse of discretion in denying Prime's motion to dismiss.[3] This Court requested and received a response to the petition for writ of mandamus from RZQ,[4] and further received a reply thereto from Prime.

## II. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). "A trial court has no discretion in applying the law to the facts or determining what the law is." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135. We assess the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re State*, 355 S.W.3d 611, 614–15 (Tex. 2011) (orig. proceeding); *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). In performing this balancing, we look at a number of factors, including whether mandamus review "will spare litigants and the public 'the time and money utterly

---

[3] More specifically, Prime contends that the trial court erred in denying its motion, supplemental motion, and motion to reconsider. Mandamus is typically not available to contest the failure to reconsider a prior ruling because courts are not required to reconsider prior rulings; therefore, it is not an abuse of discretion to refuse such motions for reconsideration. *In re GreatAm. Leasing Corp.*, 294 S.W.3d 912, 915 n.2 (Tex. App.—Corpus Christi 2009, orig. proceeding); *Elec. Data Sys. Corp. v. Tyson*, 862 S.W.2d 728, 736–37 n.5 (Tex. App—Dallas 1993, orig. proceeding); *J.K. & Susie L. Wadley Research & Inst. Blood Bank v. Whittington*, 843 S.W.2d 77, 86–87 n.9 (Tex. App.—Dallas 1992, orig. proceeding). Accordingly, our review herein focuses on the trial court's denial of Prime's motion to dismiss.

[4] RZQ's response to the petition for writ of mandamus was due on September 26, 2014. On September 29, 2014, RZQ filed a third unopposed motion for extension of time to file its response to the petition for writ of mandamus, seeking until that date to file its response, and also filed the response itself. Accordingly, we grant RZQ's third unopposed motion for extension of time to file its response to the petition for writ of mandamus.

4

wasted enduring eventual reversal of improperly conducted proceedings.'" *In re State*, 355 S.W.3d at 615 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136).

The Texas Supreme Court has repeatedly held that mandamus relief is available to enforce a forum-selection clause in a contract. *See, e.g., In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding); *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (orig. proceeding); *In re Int'l Profit Assocs.*, 286 S.W.3d 921, 922 (Tex. 2009) (orig. proceeding) (per curiam); *In re Int'l Profit Assocs.,* 274 S.W.3d 672, 674 (Tex. 2009) (orig. proceeding) (per curiam); *In re AutoNation, Inc.*, 228 S.W.3d 663, 665 (Tex. 2007) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d 109, 115–19 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause. *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 883; *In re Laibe Corp.*, 307 S.W.3d at 316. Further, an appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause because allowing the trial to go forward will "vitiate and render illusory the subject matter of an appeal," that is, trial in the proper forum. *In re AIU Ins. Co.*, 148 S.W.3d at 115 (quoting *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d at 269, 272 (Tex. 1992)); *accord In re Laibe Corp.*, 307 S.W.3d at 316. Allowing a lawsuit to proceed in a forum other than that for which the parties contracted injects inefficiency into the judicial process by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics. *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 883; *In re AutoNation, Inc.*, 228 S.W.3d at 667–68; *In re AIU Ins. Co.*, 148 S.W.3d at 117.

### III. FORUM-SELECTION CLAUSES

Forum-selection clauses are contractual arrangements whereby parties agree in

advance to submit their disputes for resolution within a particular jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 700 (Tex. App.—Dallas 2010, no pet.); *Phoenix Network Techs. (Eur.) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The enforcement of valid forum-selection clauses, bargained for by the parties, protects the parties' "legitimate expectations" and furthers "the vital interests of the justice system," such as sparing litigants the time and expense of pretrial motions to determine the proper forum for disputes. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring); *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991); *RSR Corp.*, 309 S.W.3d at 700; *Phoenix Network Techs.*, 177 S.W.3d at 611.

The Texas Supreme Court has adopted the federal analysis of forum-selection clauses to determine their enforceability. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 558–59 (Tex. 2004) (orig. proceeding) (per curiam); *In re AIU Ins. Co.*, 148 S.W.3d at 111–14; *Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also In re Dingo Drilling, Inc.*, No. 14-13-00015-CV, 2013 WL 645206, at *2 (Tex. App.—Houston [14th Dist.] Feb. 21, 2013, orig. proceeding) (per curiam) (mem. op.). Under this analysis, forum-selection clauses are presumptively valid. *In re Laibe Corp.*, 307 S.W.3d at 316; *In re Int'l Profit Assocs.*, 274 S.W.3d at 680; *Stokes Interest, G.P. v. Santo-Pietro*, 343 S.W.3d 441, 444 (Tex. App.—El Paso 2010, no pet.). While there may be "extreme circumstances" that prevent the enforcement of forum-selection clauses, there is not "a bright-line test for avoiding enforcement of forum-selection clauses." *In re ADM Investor Servs.*, 304 S.W.3d at 376 (following *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). A trial court

6

abuses its discretion in refusing to enforce a forum-selection clause unless the party opposing enforcement clearly shows: (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375; *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (orig. proceeding) (per curiam); *see also In re Brown*, No. 05-13-01354-CV, 2013 WL 6115855, at *1 (Tex. App.—Dallas Nov. 21, 2013, orig. proceeding). The burden of proof is heavy for the party challenging enforcement. *In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375; *see also In re Brown*, 2013 WL 6115855, at *1.

A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause. *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 261 (Tex. App.—Austin 2010, pet. dism'd); *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 626 (Tex. App.—Texarkana 2008, pet. denied). While we review the trial court's ruling on a motion to dismiss for abuse of discretion; *see In re Lyon Fin. Servs.*, 257 S.W.3d at 231–32, to the extent that our review involves the construction or interpretation of an unambiguous contract, the standard of review is de novo. *Phoenix Network Techs.*, 177 S.W.3d at 610; *see also W. Tex. Hospitality, Inc. v. Enercon Int'l, Inc.*, No. 07-09-0213-CV, 2010 WL 3417845, at *4 (Tex. App.—Amarillo Aug. 31, 2010, no pet.) (mem. op.).

## IV. ANALYSIS

Prime asserts that the forum-selection clause is enforceable and compels dismissal of this action in favor of a forum in Utah. RZQ raises numerous reasons why it asserts that the forum-selection clause should not be enforced. When a party seeks to

7

enforce a forum-selection clause, the trial court must first determine whether the claims asserted in the lawsuit fall within the scope of the clause. *See Young*, 336 S.W.3d at 262; *In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 169 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). If the court is satisfied with this threshold showing, the party resisting enforcement of the forum-selection clause then assumes the heavy burden of clearly demonstrating that the clause should not be enforced. *In re Lyon Fin. Servs.*, 257 S.W.3d at 231–232.

## A. Applicability

Prime and RZQ contest whether the claims at issue in this lawsuit fall within the scope of the forum-selection clause in the insurance policy issued by Prime. The forum-selection clause in this case covers "any claims or disputes arising between the parties related to any insurance coverage issues and any payments due the Insured under the Policy." RZQ contends that its claims are not "related to any insurance coverage issues" and "any payments due" to it. RZQ argues that because Prime pleaded that "RZQ made a claim for property damage on the Prime policy and Prime has paid or agreed to pay under the policy," that Prime's "own pleading indicated that there was no coverage issue." RZQ thus alleges that it has not raised any "coverage issues" which fall within the scope of the forum-selection clause.[5]

In determining whether claims fall within the scope of a forum-selection clause, we utilize a "commonsense" examination of the substance of the claims made to determine

---

[5] RZQ asserts that the deposition of Todd Copeland, one of Prime's insurance adjusters, supports its position even though RZQ concedes that this testimony was not before the trial court at the time of the trial court's rulings. We do not consider this evidence in this proceeding. *See In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (stating that, in mandamus proceedings, we "focus on the record that was before the trial court" and exclude from our consideration filings "that were not part of the trial court record at the time of the hearing on the motion that is the subject of the original proceeding").

8

if they "arise" from the contract. *In re Fisher*, 433 S.W.3d 523, 529–30 (Tex. 2014) (orig. proceeding); *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding); *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding) (per curiam). We consider whether a claimant seeks a direct benefit from a contract and whether the contract or some other general legal obligation establishes the duty at issue. *In re Fisher*, 433 S.W.3d at 529–30; *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 884–86; *In re Int'l Profit Assocs.*, 274 S.W.3d at 677. We do not rely on how the claimant characterizes or pleads its claims. *In re Int'l Profit Assocs.*, 274 S.W.3d at 677 (stating that the determination regarding whether claims seek a direct benefit from a contract "turns on the substance of the claim, not artful pleading").

The issue of "coverage" is one of contractual liability on the insurance policy. *See Pioneer Chlor Alkali Co. v. Royal Indem. Co.*, 879 S.W.2d 920, 933 (Tex. App.—Houston [14th Dist.] 1994, no writ). A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *see Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) ("In determining the scope of coverage, we examine the policy as a whole to ascertain the true intent of the parties."); *Mid–Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 158 (Tex. 1999) ("Fundamentally, of course, the issue is what coverage is intended to be provided by insurers and acquired and shared by premium payers.").

According to its first amended original petition, RZQ brought suit against Prime for "breach of the agreement" because it purchased "insurance coverage as shown by the quote and binder" from Prime. RZQ thus alleged that it was suing for "breach of the insurance agreement as shown by the quote and binder and all resulting damages." RZQ

alleged that Prime failed to pay it "benefits under the coverage purchased." RZQ also brought claims against Prime for violations of the Deceptive Trade Practices Act and the Texas Insurance Code for, inter alia, refusing to pay a claim without a reasonable investigation and misrepresenting material facts "relating to coverage at issue." RZQ's claims against Prime for breach of the duty of good faith and fair dealing was premised on its "special relationship" with Prime "existing as a result of the insurance coverage purchased." RZQ's allegations of negligence against Prime included "providing an inaccurate and low ball estimate payment for the MRI."

Applying the reasoning from the foregoing Texas Supreme Court cases, Prime's obligations to RZQ arise from the insurance policy issued by Prime to RZQ. Stated otherwise, Prime's obligations to RZQ were not imposed under general law, because they would not exist but for the contract to provide insurance, and therefore they arose out of the contract to provide insurance. *See In re Fisher*, 433 S.W.3d at 529–30; *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 886; *In re Int'l Profit Assocs.*, 274 S.W.3d at 677–78. In this case, the scope of the forum-selection clause is broad and encompasses "any claims or disputes arising between the parties related to any insurance coverage issues and any payments due to the Insured under the Policy." We thus conclude that RZQ's claims against Prime fall within the scope of the forum-selection clause at issue.

### B. Waiver

RZQ contends that Prime waived enforcement of the forum-selection clause when it substantially invoked the litigation process by filing a subrogation claim in Texas. RZQ argues that Prime cannot seek to enforce the policy in a Texas court and, at the same time, allege that its suit on the policy should be brought in another forum.

10

On June 3, 2013, Prime, as subrogee of RZQ, brought suit in the 275th Judicial District Court of Hidalgo County, Texas against Second Street Professional Association, South 2nd Street Professional Center Association, Inc., d/b/a South 2nd Street Professional Center Condominiums, South 2nd Street Professional Center Condominium Association a/k/a South 2nd Street Professional Center Condos, a/k/a South 2nd Street Professional Center Condominiums, and "John Doe" for negligence, breach of contract, and breach of the implied warranty of suitability regarding its ownership or management of 1200 South Second Street, the building containing the medical imaging facility leased by RZQ. According to the petition, Prime's commercial insurance policy provided coverage with respect to the business personal property located at 1200 South Second Street in McAllen, Texas, RZQ was an occupant or tenant of the building, and the defendants were the owners, landlords, or managers of the building. Prime alleges that the policy included a subrogation clause providing that "[i]f an insured has rights to recover all or a part of any payment for Damage of Loss or Claim Expenses we have made under this Policy from any person or organization, those rights are hereby transferred to the Insurer." The gravamen of Prime's claims was that the defendants had the responsibility to maintain and repair the premises and their failure to do so allowed a leak or intrusion of water from a roof drain pipe to cause damage to the property on the date of the storm. Prime thus alleged that it was subrogated to RZQ's property damage claims against the defendants who were responsible for the maintenance and upkeep of the building.

Waiver occurs when a party substantially invokes the judicial process to the other party's detriment or prejudice. *See Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014); *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008); *In re ADM Investor Servs., Inc.*, 304 S.W.3d at 374. Waiver is primarily a function of intent and

11

requires either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 393–94 (Tex. 2014); *Perry Homes*, 258 S.W.3d at 602–03; *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (per curiam) (orig. proceeding); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). There is a strong presumption against waiver. *In re ADM Investor Servs., Inc.*, 304 S.W.3d at 374; *Perry Homes*, 258 S.W.3d at 590. We consider whether waiver has occurred on a case-by-case basis by examining the totality of the circumstances. *In re ADM Investor Servs., Inc.*, 304 S.W.3d at 374.[6] The law regarding waiver applies to forum-selection clauses; thus, a party waives a forum-selection clause by substantially invoking the judicial process to the other party's detriment or prejudice. *See id.; In re Automated Collection Techs., Inc.*, 156 S.W.3d at 559.

In the instant case, the sole event that RZQ relies on in contending that Prime waived enforcement of the forum-selection clause is Prime's institution of its subrogation action against RZQ's landlords in Texas. We agree that filing a lawsuit in a different forum than that dictated by a forum-selection clause may be an important factor in determining

---

[6] In *Perry Homes*, the supreme court listed several factors to be considered in a waiver analysis regarding arbitration, including: (1) whether the movant was the plaintiff (who chose to file in court) or the defendant (who merely responded); (2) how long the movant delayed before seeking arbitration; (3) whether the movant knew of the arbitration clause all along; (4) how much pretrial activity related to the merits rather than arbitrability, jurisdiction, or standing; (5) how much time and expense had been incurred in litigation; (6) whether the movant sought or opposed arbitration earlier in the case; (7) whether the movant filed affirmative claims or dispositive motions (sought judgment on the merits); (8) what discovery would be unavailable in arbitration; (9) whether activity in court would be duplicated in arbitration; (10) when the case was to be tried; and (11) how much discovery had been conducted, who initiated it, and how much of it would be useful in arbitration. *Perry Homes v. Cull*, 258 S.W.3d 580, 602–03 (Tex. 2008). No single one of these factors is dispositive of whether a party has waived its right to enforce an arbitration clause. *Id.* at 591. While some of these factors do not fit well into analyzing whether a party has waived application of a forum selection clause, they nevertheless provide a useful paradigm for determining whether Prime waived its right to enforce the forum selection clauses under the totality of the circumstances in this case. *See, e.g., In re Boehme*, 256 S.W.3d 878, 885 (Tex. App.—Houston [14th Dist. 2008, orig. proceeding); *see also In re Counsel Fin. Servs., L.L.C.*, No. 13-12-00151-CV, 2013 WL 3895317, at *6 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding) (mem. op.).

12

waiver. *Cf. Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 495 (5th Cir. 1986) (considering waiver in arbitration context); *see also In re Counsel Fin. Servs., L.L.C.*, No. 13-12-00151-CV, 2013 WL 3895317, at *8 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding) (mem. op.); *Practicehwy.com, Inc. v. Albany IVF Fertility & Gynecology, PLLC*, No. 05-06-00222-CV, 2006 WL 2960838, at *2 (Tex. App.—Dallas Oct. 18, 2006, no pet.) (mem. op.) (same). However, the forum-selection clause in this case applies to lawsuits between the insurer and insured, not lawsuits regarding third parties to that policy. While Prime instituted litigation in Texas to pursue its subrogation rights under the policy, it was specifically entitled to do so under the insurance policy, and the subrogation action was not governed by the forum selection clause. Moreover, waiver occurs when a party substantially invokes litigation with the other party in the litigation, not third parties to that lawsuit. *See Kennedy Hodges, L.L.P.*, 433 S.W.3d at 545 (holding that a law firm did not waive its right to arbitrate a fee dispute with former clients by litigating with a former associate); *In re Service Corp. Int'l*, 85 S.W.3d 171, 175 (Tex. 2002) (orig. proceeding) (holding that a party who litigated one claim with an opponent did not substantially invoke the litigation process for a related yet distinct claim against another party with whom it had an arbitration agreement). Looking at the totality of the circumstances, we conclude that Prime did not engage in either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Crosstex Energy Servs., L.P.*, 430 S.W.3d at 393–94. Prime's litigation with RZQ's landlords did not substantially invoke the litigation process with RZQ. Moreover, RZQ has neither alleged nor shown that it suffered detriment or prejudice as a result of the subrogation lawsuit. *Kennedy Hodges, L.L.P.*, 433 S.W.3d at 545. Accordingly, Prime did not waive its right to enforcement of the forum-selection agreement.

13

## C. Fundamental Fairness

The parties to this original proceeding disagree regarding the appropriate standard of review that we employ to determine whether a forum-selection clause is enforceable. RZQ contends that the enforceability of the forum-selection clause should be determined under a "fundamental fairness" standard and relies on two decisions in so asserting. *See Luxury Travel Source v. Am. Airlines, Inc.*, 276 S.W.3d 154, 168 (Tex. App.—Fort Worth 2008, no pet.); *Stobaugh v. Norwegian Cruise Line Ltd.*, 5 S.W.3d 232, 235 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Prime contends that, because the Texas Supreme Court has adopted the "federal analysis" of forum-selection clauses to determine their enforceability, *see Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 793; *In re Automated Collection Techs., Inc.*, 156 S.W.3d at 558–59, the fundamental fairness standard no longer reflects current Texas law. *See Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 692 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("[T]he Supreme Court of Texas recently abandoned this legal standard for analyzing mandatory forum-selection clauses, opting instead to adopt the standard employed by federal courts. Therefore, the Deep Water Parties' argument is premised on the wrong legal standard.").

The "fundamental fairness" analysis originates in the United States Supreme Court opinion in *Carnival Cruise Lines* and has been discussed by the Texas Supreme Court subsequent to its adoption of the federal approach to the analysis of forum-selection clauses. *See In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 924 (discussing *Carnival Cruise Lines, Inc.*, 499 U.S. at 595); *In re AIU Ins. Co.*, 148 S.W.3d at 114 (same).[7] We perceive

---

[7] *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 99 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("a forum[-]selection clause in a non-negotiated form contract is valid so long as it is not

14

no discrepancy in the controlling law. The fundamental fairness inquiry can be construed as a generalized and broad statement of the applicable law regarding the enforceability of a forum selection clause which encompasses the more specific tests recently articulated by the Texas Supreme Court, which are whether (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *See In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375. Stated otherwise, these concepts are overlapping.

Under *Stobaugh* and *Luxury Travel Source*, we determine whether a forum selection clause is fundamentally unfair by considering: (1) whether there is an indication that the forum was selected to discourage legitimate claims, (2) whether the opposing party was given adequate notice of the forum selection clause, and (3) whether the opposing party retained the option of rejecting the contract with impunity following notice of the forum selection clause. *See Luxury Travel Source*, 276 S.W.3d at 168; *Stobaugh*, 5 S.W.3d at 235. These specific factors derive from admiralty law, *see Luxury Travel Source*, 276 S.W.3d at 168; *Stobaugh*, 5 S.W.3d at 235, and thus are of arguably limited application to the instant case, which does not involve maritime law. Nevertheless, these factors generally fall within the framework applicable to the analysis of forum selection

---

fundamentally unfair"); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203 (Tex. App.—Eastland 2001, pet. denied) ("Even though a forum[-]selection clause in a non-negotiated form contract is valid, enforcement of the clause is subject to judicial scrutiny for fundamental fairness."); *Cismaru v. Radisson Seven Seas Cruises, Inc.*, No. 07-00-00100-CV, 2001 WL 6546, at *1 (Tex. App.—Amarillo Jan. 2, 2001, no pet.) (mem. op.) (following *Carnival Cruise* and stating that federal maritime law dictates that forum-selection clauses "are subject to judicial scrutiny for fundamental fairness" and utilizing same indicia for assessing fundamental fairness); *Gen. Mortgage Acceptance Corp. v. Inter-Tel Leasing, Inc.*, No. 01-99-00809-CV, 1999 WL 1240936, at *1 (Tex. App.—Houston [1st Dist.] Dec. 23, 1999, no pet.) (mem. op.) ("Finally, there is nothing to suggest that the forum-selection clause is fundamentally unfair or that ITL insisted on the clause in bad faith.").

15

clauses insofar as they concern whether enforcement of the clause would be unreasonable or unjust, or whether the clause is invalid for reasons of fraud or overreaching. *See In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375. The Texas Supreme Court has not expressly incorporated the three *Stobaugh* factors into the enforceability analysis of forum selection clauses in non-maritime cases; however, it has addressed some of these factors in the context of an insurance coverage dispute. *See In re AIU Ins. Co.*, 148 S.W.3d at 114. Accordingly, we do likewise. *See id.*

### D. Lack of Notice

RZQ contends that it was not given any notice that the insurance policy contained a forum selection clause, thus the forum selection clause is unenforceable. RZQ argues that the legal effect of a forum selection clause depends upon whether its existence was reasonably communicated to it. RZQ asserts that Prime never provided it with a copy of the insurance policy, which contains the forum selection clause, and instead only provided it with the insurance quote and the insurance binder, neither of which contained a forum selection clause.[8] RZQ alleges that it did not become aware of the forum selection clause until after the date of loss and the coverage period expired.

In the instant case, before Prime issued the policy at issue, RZQ obtained a quote and binder of insurance through insurance agent Felipe Farias and surplus lines broker, McClelland & Hine, Inc. In connection with its application for insurance coverage, RZQ

---

[8] A quote is not an insurance contract; rather, it is an offer to make a contract of insurance. *See Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 789 (Tex. App.—Dallas 2011, no pet.). Clearly, an insurance quote summarizes the proposed coverage and does not contain all the terms, provisions, and exclusions that are set forth in the actual insurance policy. *Id.* An insurance binder is a contract that provides insurance coverage pending the issuance of an original insurance policy. *Id.* at 790. Generally, a binder provides only as much coverage as will be provided in the contemplated policy itself. *Id.*

16

signed a "Claims Warranty and Coverage Statement" stating that the "Policy/Certificate to be issued differs significantly from claims made or occurrence-type general liability policies offered by other insurance companies. It is a manuscript policy with very strict reporting requirements." This statement instructed RZQ, as the applicant, to "[p]lease read the Policy/Certificate and all Endorsements carefully to determine your rights and duties and what is and is not covered."

The records from the Surplus Lines Stamping Office of Texas show that Policy No. #SC1106160 was issued by Prime on June 8, 2011, and a copy of the policy was filed by McClelland with the Surplus Lines Stamping Office of Texas on June 16, 2011, prior to the loss. Although the forum selection clause is also included in the "Policy Receipt Form and Coverage Conditions Summary," RZQ never signed and returned the form acknowledging its receipt of a copy of the policy from its broker or agent who was responsible for providing the policy.

The Texas Supreme Court has rejected the argument that the failure to provide a copy of an agreement containing a forum selection clause to a claimant constitutes the type of fundamental unfairness that precludes enforcement of the forum selection clause. *See In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 924. In that case, the claimant argued that it would be fundamentally unfair to enforce a forum selection clause that his representative was never shown when he signed the contract. *Id.* at 923. The Texas Supreme Court agreed with the claimant that we examine forum selection clauses for fundamental unfairness, but stated that this analysis applies to determine whether "the clause itself [is] fundamentally unfair" and does not apply to the argument that the "forum-selection clause is unfair because its representative was never given the first page of the

17

agreement that included the forum-selection clause." *Id.* at 924.[9]

Moreover, and more to the point, simply being unaware of a forum-selection clause does not make it invalid. *Id.; In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 233; *Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 529 (Tex. App.—Dallas 2010, no pet.). The Texas Supreme Court explained in *Lyon Financial Services* that "parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 233; *see In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 924; *Falk & Fish, L.L.P.*, 317 S.W.3d at 529. "If we were to determine otherwise, it would require a party seeking to enforce a forum-selection clause to prove that the opposing party was separately shown each provision of every contract sought to be enforced and was subjectively aware of each clause." *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 924. And, specifically applicable to this case, an insured is charged with knowledge of the provisions of the insurance policy, that is, it will be deemed to know the contents of the contract it makes. *See, e.g., Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.); *Jeffries v. Pat A. Madison, Inc.*, 269 S.W.3d 689, 692 (Tex. App.—Eastland 2008, no pet.); *E.R.*

---

[9] The parties disagree regarding who had the duty to provide RZQ with a copy of the insurance policy at issue. Prime asserts that McClelland was solely responsible for delivering the policy or other confirmation of insurance to either RZQ or Farias, the insurance agent, whereas RZQ asserts that Prime had the affirmative duty to provide the policy to RZQ. The Texas Insurance Code provides in relevant part that on "placing new or renewal surplus lines coverage, a surplus lines agent shall promptly issue and deliver to the insured or to the insured's agent" either the policy issued by the insurer; or if the policy is not available, a certificate, cover note, or other confirmation of insurance. *See* TEX. INS. CODE ANN. § 981.103(a) (West, Westlaw through 2013 3d C.S.). If "the policy is not available at the time of placement of the insurance," the surplus lines agent shall, "on the insured's request and as soon as reasonably possible" obtain the policy from the insurer and deliver the policy to the insured to replace the certificate, cover note, or other confirmation of insurance previously issued. *Id.* § 981.103(b); *see also Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 775 (Tex. App.—Austin 2005), *aff'd*, 209 S.W.3d 83 (Tex. 2005). Given that the resolution of this issue is not dispositive of the issues in this original proceeding, we need not address it further herein. *See* TEX. R. APP. P. 47.4

18

*Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d 311, 317 (Tex. App.—Beaumont 2004, no pet.); *Pankow v. Colonial Life Ins. Co. of Tex.*, 932 S.W.2d 271, 277 (Tex. App.—Amarillo 1996, writ denied); *Shindler v. Mid-Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex. App.—Houston [14th Dist.]1989, no writ); *Standard Accident Ins. Co. v. Employers Cas. Co.*, 419 S.W.2d 429, 432 (Tex. Civ. App.—Dallas 1967, writ ref'd n.r.e.); *see also In re Prime Ins. Co.*, No. 09-11-00349-CV, 2011 WL 3505143, at *3 (Tex. App.—Beaumont Aug. 11, 2011, orig. proceeding) (mem. op.). In the instant case, although the quote and binder did not reference the forum selection clause, it is clear that the quote and binder did not constitute the parties' entire agreement. *See Howard*, 347 S.W.3d at 789–90; *cf. In re Lyon*, 257 S.W.3d at 232 ("[a] party who signs a document is presumed to know its contents" including "documents specifically incorporated by reference"). There is no evidence in the record that Prime concealed the forum-selection clause or evidence proving Prime concealed the clause with an intent to defraud RZQ, thus RZQ's allegations that it was unaware of the forum selection clause are insufficient as a matter of law to prove fraud or overreaching. *See In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 923; *In re Lyon*, 257 S.W.3d at 231–32. Accordingly, we reject RZQ's contention that Prime's alleged failure to notify RZQ that the policy contained a forum selection clause rendered enforcement of the forum selection clause fundamentally unfair.[10]

---

[10] RZQ relies *on Lujan v. Alorica*, No. 08-12-00286-CV, 2014 WL 4656625, at *4 (Tex. App.—El Paso Sept. 19, 2014, no pet. h.), in asserting that Prime failed to establish the parties' mutual assent or meeting of the minds regarding the forum selection clause. In *Lujan*, an employer sought to enforce a forum selection clause contained in a letter offering employment to a potential employee. The employee accepted employment with the company, but did not sign and return the letter agreement containing the forum selection clause. *Id.* The El Paso Court of Appeals denied enforcement of the forum selection clause on grounds that the employee did not accept the offer of employment in the manner prescribed in the letter offer because the employee never signed the letter agreement. *Id.* at **5–6. The instant case is distinguishable insofar as RZQ is charged with knowledge of the forum selection clause and because there

### E. No Right of Rejection

RZQ contends that it did not have the right to reject the insurance policy with impunity following notice of the forum-selection clause. RZQ contends that the quote provided that the "[p]olicy is deemed 40 percent minimum earned upon binding," the binder provided that "[p]ayment is due within 30 days of the date of this Binder," and the policy itself provided that the "total premium will be deemed . . . fully-earned in the event a Claim is made at any time of the Policy prior to cancellation." RZQ thus argues that it could not reject the insurance policy with impunity "after notice of the forum-selection clause without forfeiting substantial funds," and that after notice, it "was simply not in a position to do anything as the loss had already occurred." In making this argument, RZQ urges us to apply the reasoning in *Stobaugh v. Norwegian Cruise Line Ltd.*, 5 S.W.3d at 235. In *Stobaugh*, the court refused to enforce a forum-selection clause when the passengers first received notice of the clause upon receipt of their cruise tickets, that is, at a time when they could not cancel the cruise without incurring a financial penalty. *Stobaugh,* 5 S.W.3d at 235.

Assuming without deciding that the "rejection with impunity" factor applies in non-maritime Texas cases, *see Phoenix Network Techs.*, 177 S.W.3d at 613, there are numerous problems with RZQ's argument. First, *Stobaugh* is factually distinguishable from the instant case because, in this case, RZQ is charged with constructive notice of the terms of the policy, including the forum-selection clause at issue. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 233; *see In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 924. Presumably, had RZQ informed itself regarding the terms of the proposed contract prior

---

is no evidence that RZQ accepted the surplus lines coverage in a different manner than that contemplated by Prime's offer.

to execution, it would have had the opportunity to reject the contract terms without incurring any financial penalty. *See, e.g., Tateosian v. Celebrity Cruise Servs., Ltd.*, 768 A.2d 1248, 1252 (R.I. 2001).

Second, RZQ's claim that it cannot reject the policy with impunity because it has already paid for the policy runs afoul of the concept that a contracting party cannot accept the benefits of a contract and disclaim its obligations. *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 74 (Tex. 2008). Finally, RZQ's argument can be construed as an attack on the insurance policy as an alleged adhesion contract. Texas law defines an adhesion contract as a contract in which one party has absolutely no bargaining power or ability to change the contract terms. *See In re Media Arts Grp., Inc.*, 116 S.W.3d 900, 911 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding [mand. denied]); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 370–71 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Adhesion contracts are not per se unconscionable or void. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 233; *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) (orig. proceeding); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex. 1999) (orig. proceeding). Furthermore, there is no indication that Prime unfairly utilized an unequal bargaining power to obtain RZQ's participation in the insurance agreement, thus RZQ cannot claim that it was not able to reject the agreement with impunity. *See Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied) (analyzing "rejection with impunity" doctrine in terms of bargaining power). The record before the Court indicates that the parties to this transaction were sophisticated business entities engaged in an arms-length transaction. Accordingly, we reject RZQ's contention that the forum-selection clause is unenforceable because RZQ lacked the ability to reject it with

21

impunity.

## F. Forum Selected to Discourage Claims

Real parties argue that Utah was selected by Prime to discourage claims. RZQ contends that the Surplus Lines Stamping Office of Texas shows that Prime's Texas writings were ranked 1 out of 49 for 2011, and 1 out of 50 for 2012. "Selection of Utah for the litigation of Texas claims when Prime had more writings in Texas than any other jurisdiction certainly appears calculated to discourage claims by RZQ and Texas insureds." RZQ further contends that Prime is domiciled in Illinois, whereas Prime asserts that it is "based" in Utah.

RZQ's contentions that Prime selected Utah as the forum in which to litigate are based on speculation or conjecture and are unsupported by the record evidence. Speculation and conjecture will not satisfy the heavy burden of proof for the party challenging enforcement of the forum-selection clause. *See In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375. There is no evidence in the record that Prime set Utah as the forum in which disputes were to be resolved as a means of discouraging its insureds from pursuing legitimate claims. *See In re AIU Ins. Co.*, 148 S.W.3d at 113–14. Utah is not a "remote alien forum." *Carnival Cruise Lines, Inc.*, 499 U.S. at 593 (quoting *M/S Bremen*, 407 U.S. at 17).

To some extent, it appears that RZQ is evoking the concept that Utah would be seriously inconvenient for trial. *See In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375. When inconvenience in litigating in the chosen forum is foreseeable at the time of contracting, the challenger must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *See In re AIU Ins. Co.*, 148 S.W.3d at 114–15

22

(quoting *M/S Bremen*, 407 U.S. at 18); *In re ADM Investor Servs., Inc.*, 304 S.W.3d at 375; *see also In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 234. In the instant case, RZQ failed to meet its heavy burden to establish that enforcing the forum-selection clause will be unreasonable or unjust, or seriously inconvenient. Nothing in the record establishes that RZQ could not proceed in Utah. Moreover, while a trial in Texas is undoubtedly more convenient for a Texas resident, RZQ failed to prove that a trial in Utah would deprive it of its day in court.

### G. Fraud and Overreaching

RZQ argues that the forum-selection clause in the insurance policy is invalid for fraud and overreaching in connection with the "fundamental fairness" arguments already addressed herein. As previously stated, the fact that Prime did not specifically inform RZQ that the insurance policy contained a forum-selection clause prior to entering into the contract is insufficient to show that Prime engaged in fraud or overreaching in obtaining RZQ's agreement to the forum-selection clause. *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 923. There is no evidence in the record that Prime made any misrepresentations about or fraudulently concealed the existence of any portion of the contract or that the forum was chosen to deprive the client of its substantive rights. *See id.* Accordingly, we conclude that the forum-selection clause was not rendered unenforceable by reasons of fraud or overreaching.

### H. Severability

Prime contends that the trial court concluded that RZQ was entitled to the insurance policy's benefits, but was not bound by the insurance policy's conditions or limitations, specifically, the forum-selection clause and the choice of law provision. Prime asserts that RZQ cannot rely on the quote and binder alone to claim policy benefits while

simultaneously disclaiming the policy's other terms and conditions, namely, the forum-selection clause. In contrast, RZQ contends that the trial court's actions were supported by a severability clause in the insurance policy at issue. The severability provision states: If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions, or parts." Given our determination that the forum-selection clause is enforceable, we need not further address the impact of the severability clause on the matters herein. *See* TEX. R. APP. P. 47.1, 47.4.

## I. Consideration

RZQ finally contends that the forum-selection clause is not supported by consideration. Forum-selection clauses do not require mutuality of obligation so long as the contract as a whole provides consideration. *See In re Laibe Corp.*, 307 S.W.3d at 317; *In re Lyon Fin. Servs.*, 257 S.W.3d at 233; *see also In re Counsel Fin. Servs., L.L.C.*, 2013 WL 3895317, at *4. Here, the contract as a whole does not lack for consideration; the contract evidenced a routine purchase of insurance with one party providing consideration in the form of coverage and the other party providing monetary consideration. Moreover, a court determining whether or not to enforce a forum-selection clause will not inquire into the enforceability of the contract in which that clause is found. *See Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 102 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Accordingly, we reject RZQ's contention that the lack of consideration renders the forum-selection clause unenforceable.

24

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that Prime has met its burden to obtain mandamus relief. Accordingly, the Court lifts the stay that was previously imposed in this case. We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its orders denying Prime's motions to dismiss and to sign an order granting Prime's motion to dismiss. The writ will issue only in the event that the trial court fails to do so.

<u>**/s/ Rogelio Valdez**</u>
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
16th day of October, 2014.